**Don Evans CHAMBLISS,
Plaintiff-Appellant,**

v.

**SHONEY'S INC., Defendant-Appellee.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Oct. 23, 1987.

Application for Permission to Appeal
Denied by Supreme Court
Dec. 21, 1987.

W.A. Moody, Nashville, for plaintiff-appellant.

Robert Orr, Jr., Nashville, for defendant-appellee.

## OPINION

TODD, Presiding Judge.

The plaintiff, Don Evans Chambliss, has appealed from a directed verdict and judgment dismissing his suit against the defendant, Shoney's Inc., for injuries sustained when plaintiff slipped and fell on the premises of defendant.

The sole issue on appeal is the correctness of the directed verdict entered at the conclusion of plaintiff's evidence.

Plaintiff presented evidence of the following facts:

Prior to February 5, 1985, considerable snow had fallen. It was in the process of "melting off" on February 5 when plaintiff entered the restaurant of defendant with relatives to have lunch. After being seated, plaintiff arose and went to the restroom maintained for patrons. As he started to leave the restroom his feet slipped, and he fell. He had not previously seen water on the floor; but, after falling, he could feel water under himself. He had no information as to the origin of the water. After the fall, the coat and pants of plaintiff were wet. The water on the floor covered a considerable area, and could have been seen by plaintiff as he entered the restroom.

The parking lot adjoining the restaurant was "partly frozen and partly slushy". On other occasions customers would "bang their feet" to remove snow and slush upon entering the restaurant, but there is no evidence that such occurred on the date of the injury. There were no mats in place for cleaning feet. Employees are instructed to inspect floors once per hour, but may fail to do so during a busy period. A supervisor inspected the restroom floor at 10:30, 11:15 and 11:30 a.m. Plaintiff fell about 12 noon. "It is possible" that the restroom floor had not been inspected for 45 minutes before plaintiff fell. The floor of the restroom is "inlaid brick" and is smooth.

There is testimony as to the location of the restroom in relation to the entrance of the restaurant, but it is difficult to interpret because of the absence of fourteen exhibits mentioned in the testimony but not filed with the Trial Clerk and not transmitted to this Court. Pertinent testimony is as follows:

Q. (By Mr. Orr) Now, this enlargement, Mr. Chambliss, let me look over here so that the jury can see it. This drawing shows the door that you go in, and then there's the entranceway; isn't that correct?

A. Correct.

Q. And in the picture here you'd go down toward the lower right-hand side, but as you're coming on the left the door goes to the men's room; isn't that correct?

A. Correct.

Q. And if you went to the right, the ladies' room is over here where these doors are?

A. Correct.

The foregoing seems to indicate that the doorway of the restroom did not immediately adjoin the outside door of the restaurant. This is significant because there is no evidence of water on the floor of the restaurant at or near its entrance.

On review of a directed verdict for the defendant, the appellate court does not weigh the evidence, but must take the strongest legitimate view of the evidence in favor of the plaintiff, indulging all reasonable inferences in plaintiff's favor, and disregarding any evidence to the contrary. The directed verdict may be affirmed only if there is no material evidence in the record which would support a verdict for

the plaintiff. *Wharton Transport Corp. v. Bridges,* Tenn. 1980, 606 S.W.2d 521, 24 A.L.R. 4th, 1295. *Westbrook v. Illinois Cent. Gulf R.R.,* Tenn.App. 1985, 688 S.W. 2d 453.

■ Before the owner or operator of a premises can be held liable for negligence in allowing a dangerous or defective condition to exist on the premises, such condition must have been created by the owner or operator or his agent, or, if created by someone else, there must be actual or constructive notice on the part of the owner or operator prior to the injury that the condition existed. *Benson v. H.G. Hill Stores, Inc.,* Tenn.App. 1985, 699 S.W.2d 560.

■ A property owner is liable to his invitees for injuries occasioned by the unsafe condition of the premises if the condition was known to him and not to them and was suffered to exist without timely notice to the public. The liability of a property owner to an invitee for injuries sustained on the owner's premises is grounded on the owner's superior knowledge of the perilous condition which caused the injuries. *Illinois Central R. Co. v. Nichols,* 1938, 173 Tenn. 602, 118 S.W.2d 213.

■ The proprietor of a place of business is under a duty to exercise reasonable care to keep the premises in reasonably safe and suitable condition, including the removal of or warning against unsafe conditions caused by persons for whom the proprietor is not responsible or by the elements, if the circumstances of time and place are such that, by the exercise of reasonable care, the proprietor should have been aware of such condition. In cases where the peril is not created by the proprietor or his agents, he is not liable for injuries from dangers that are obvious, reasonably apparent, or as well known to the injured party as to the proprietor. *Allison v. Blount Nat. Bank,* 1965, 54 Tenn.App. 359, 390 S.W.2d 716.

■ When there is a complete absence of proof as to when and how the dangerous condition came about, it would be improper to permit the jury to speculate on these vital elements. *Paradiso v. Kroger Co.,* Tenn.App. 1973, 499 S.W.2d 78.

There is no evidence of the source of the water which caused plaintiff to fall. It is insisted that this is a "trackage" case in which moisture was "tracked" into the premises on the feet of patrons of the restaurant. This is a possibility, but it is a remote possibility because the uncontradicted evidence shows that the restroom was some distance from the outside entrance, and there is no evidence of any moisture "trackage" between the outside entrance and the restroom. It would be most unusual and unlikely for a visitor to enter the restaurant with a quantity of snow on his feet and to proceed to the restroom without leaving any tracks of snow or water only to deposit a considerable puddle of water in the restroom. It is highly unlikely that the water emanated from a leak in the bathroom fixture, for the plaintiff testified that he did not see any such leak. It is more likely that the water was spilled or otherwise reached the floor through the actions of another patron.

Plaintiff relies heavily upon *Allison v. Blount National Bank, supra.* In that case, the bank maintained a rubber mat inside its entrance and, when customers tracked in water, an absorbent mat was placed next to the rubber mat. On the day in question, it had rained intermittently all morning, when plaintiff entered the bank at 1:00 p.m., the rubber mat was in place but the absorbent mat was not. When plaintiff stepped from the rubber mat to the adjoining terrazzo floor, she slipped and fell. There was evidence that water had been tracked into the bank by previous customers and that the bank knew it was raining but had not placed the absorbent mat in place. This Court reversed a directed verdict for the defendant and said:

> ... In the trackage cases, as in the others, liability is predicated on the proprietor's superior knowledge of the dangerous condition on his premises and he is not liable for injuries sustained from dangers that are obvious, reasonably apparent or as well known to the customer as to the proprietor. *Kendall Oil Co. v.*

*Payne,* 41 Tenn.App. 201, 293 S.W.(2d) 40; Anno. 62 A.L.R.(2d) 6, 28.

In the present case, there is no evidence to justify a finding that the puddle of water where plaintiff fell originated from trackage. Other than the presence of snow and slush outside, there is no evidence that the defendant knew or should have known that a puddle in the restroom would result from the snow and slush outside. In *Allison,* the moisture on the terrazzo was not visible to an ordinary observer. It was a "film of moisture". In the present case, the puddle of water was described as a "sheet of water, extending from here to here." He also testified as follows:

Q. So this sheet of water, you came in the door, and you didn't see it, did you?

A. No. I didn't notice it.

Q. You walked the length of the bathroom and used that stall at the end, correct?

A. Correct.

Q. And you walked back, and you walked through where the water was, didn't you?

A. I must have.

Q. And you walked over to the sink, and you washed your hands, didn't you?

A. Correct.

. . . .

Q. And then got a towel behind you?

A. Correct.

Q. And at that time you were standing right in the water you later saw?

A. I must have been.

Q. You didn't see it, did you?

A. I wasn't looking down at it.

Q. You didn't see it in any case, did you?

A. No. I wasn't looking down.

Plaintiff argues that it could be fairly inferred that failure of defendant to use signs and mats was the proximate cause of the injury. Since there is no evidence that snow or snow-water was being tracked in from the outside, and especially since the point of injury was considerably removed from the entrance, the evidence does not support an inference of negligence and proximate cause from failure to place signs or mats.

Plaintiff insists that the trackage danger could exist "from moment to moment." There is no evidence of trackage; therefore, there is no evidence of danger of trackage, either momentary or otherwise.

Plaintiff insists that the cause of the fall could be directly traced to the inclement weather and failure to take precautions appropriate thereto. Absent evidence that snow or water was being tracked into the entrance of the restaurant, there is no evidence, either remote or direct, that it was being tracked into an inside restroom which did not open directly to the outside.

Plaintiff cites *Henson v. F.W. Woolworth's Co.,* Tenn.App. 1974, 537 S.W.2d 923, but said authority is not in point. In that case, the issue was whether the slick substance was or was not present when the manager visited the area two minutes before the injury. In the present case, there is no such issue. The issue in the present case is whether the water had been on the floor for a sufficient time to justify a finding that the defendant should have discovered and removed it. There is no evidence of how long the water had been there except the uncontradicted testimony that the supervisor saw no water in the area upon inspection 30 to 45 minutes before the injury.

In the view of this Court, the evidence viewed in the light most favorable to the plaintiff does not present a situation in which a jury would be justified in finding for the plaintiff.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the plaintiff. The cause is remanded to the Trial Court for such further proceedings, if any, as may be necessary and proper.

Affirmed and remanded.

LEWIS and CANTRELL, JJ., concur.