IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION

_____

|   |   |   |
|---|---|---|
| **JEWEL DeGROOD and**, | ) | Davidson County Circuit Court |
| **FRANK DeGROOD**, | ) | No. 95C-2210 |
|   | ) |   |
| Plaintiffs/Appellants. | ) |   |
|   | ) |   |
| VS. | ) | C.A. No. 01A01-9701-CV-00031 |
|   | ) |   |
| **CROOK'S SUPERMARKET, INC.** | ) |   |
| **d/b/a STEVEN'S FOOD STORE**, | ) |   |
|   | ) |   |
| Defendant/Appellee. | ) |   |
|   | ) |   |

**FILED**

**October 29, 1997**

**Cecil W. Crowson
Appellate Court Clerk**

_____

From the Circuit Court of Davidson County at Nashville.
**Honorable Barbara N. Haynes, Judge**


**John H. Lowe**,
**Samuel A. Baron**,
LOWE & BARON, Goodlettsville, Tennessee
Attorney for Plaintiffs/Appellants.


**C. Benton Patton**, MANIER, HEROD, HOLLABAUGH & SMITH, Nashville, Tennessee
Attorney for Defendant/Appellee.


OPINION FILED:

**AFFIRMED AND REMANDED**


                                        **FARMER, J.**


**LILLARD, J.**: (Concurs)
**LEWIS, J.**: (Concurs)

Jewel DeGrood and Frank DeGrood, her husband, sued Crook's Supermarket, Inc., d/b/a Steven's Food Store (Store) alleging injuries and damages resulting from Mrs. DeGrood having fallen on the defendant's premises on August 12, 1994. The trial court granted the defendant's motion for summary judgment and the issue presented by the plaintiffs on appeal is whether or not the trial court erred in doing so.

Summary judgment is appropriate only when there are no genuine issues of material fact. The trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. If there is such a dispute, the motion must be denied. It is not the province of the court to weigh the evidence. However, once it is shown by the movant that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine material fact dispute. The respondent cannot simply rely upon his pleadings but must set forth specific facts by using affidavits or other discovery material. Rule 56.03 T.R.C.P.; ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn. 1993). No presumption of correction attaches to decisions granting summary judgment as they involve only questions of law. On appeal, we must make a fresh determination as to whether the requirements of Rule 56 T.R.C.P. have been met. ***Cowden v. Sovran Bank/Central South***, 816 S.W.2d 741, 744 (Tenn. 1991).

Viewing the evidence in this record in the light most favorable to the plaintiffs, it discloses that Mrs. DeGrood slipped and fell when she was approximately six feet from the checkout counter of the defendant's grocery store. She testified that one of the store employees that came to her assistance said that it looked like ice cream that she had fallen on. Mrs. DeGrood had no idea how the ice cream got on the floor. Mr. DeGrood, who was waiting in their automobile in the parking lot while his wife shopped, was summoned to the store after the fall. He testified that he saw ice cream on the floor but did not know how it came to be there. There was ice cream on her shoes and pants. While he was waiting outside in the car, he saw some children coming out with little cones of ice cream.

On the date of the fall, a food promotion was being conducted in the store by Eddy's Ice Cream. The ice cream was distributed by cone and the promotion was located in the back of the

store. Trash bags were located by the display and at the front of the store. Customers were allowed to move around the store with the ice cream samples in hand. Sally Owens, assistant head cashier at the time of the accident, testified that food promotions of various types were done about every other weekend.[1] She further testified that her instructions were if any debris was seen on the floor she would have someone get a "wet floor" sign, clean it up and the sign would remain there until the floor was dry. The floor was checked every hour on the hour. This was her responsibility as well as that of the store manager or assistant manager. If anything was observed on the floor between the hourly checks it was taken care of immediately. When food promotions were done, the instructions were to go back and check on the promotions to make sure there were no spills and to make sure it was kept clean. Prior to Mrs. DeGrood's fall, no one else had dropped any ice cream which had to be cleaned up off the floor. All store employees were to keep a lookout for anything that might have fallen on the floor while a food display was in process. She checked around the store as soon as Mrs. DeGrood left in the ambulance to see if there was anything that would have made her fall and saw nothing. She examined the bottom of Mrs. DeGrood's shoes and saw nothing there. Other than samples of ice cream, all the ice cream or yogurt sold in the store is enclosed or in sealed containers. She further testified that the store was well air conditioned to the point that she felt she had to dress warmly.

According to the affidavit of Ann Mercer, an employee of the store on the date of the fall, she overheard Mark Lewis, another employee, make the statement that "somebody fell on the ice cream."

Since this is a matter of summary judgment, we will presume that Mrs. DeGrood fell on ice cream. Before the owner or operator of a premises can be held liable for negligence in allowing a dangerous or defective condition to exist on the premises, it must be shown that the condition (1) was caused or created by the owner, operator or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, there must be actual or constructive notice on the part of the owner or operator that the condition existed prior to the accident. *Chambliss v. Shoney's, Inc.*, 742 S.W.2d 271, 273 (Tenn. App. 1987); *Benson v. H. G. Hill Stores,*

---

[1] August 12, 1994 was a Friday. In response to interrogatories, the defendant said at the time of the accident food promotions were conducted approximately one per week.

*Inc.*, 699 S.W.2d 560 (Tenn. App. 1985). We find no evidence in this record that the defendant created this condition and the plaintiffs concede that there is no evidence of actual notice.

If liability is predicated on constructive notice, the defective condition must have existed for such length of time that the defendant knew or, in the exercise of ordinary care, should have known, of its existence. *Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn. App. 1980). As a general rule, constructive knowledge cannot be established without some showing of the length of time the dangerous condition had existed. *Self v. Wal-Mart Stores, Inc.*, 885 F.2d 336, 338 (6th Cir. 1989); *Hardesty v. Service Merchandise Co., Inc.*, _____ S.W.2d _____ (Tenn. App. 1997).

Appellants contend that the "length of time" requirement of constructive notice has been met by the fact that the ice cream was on the floor long enough to melt. Their brief makes no cite to the record to support that the ice cream had melted and our search of the record fails to reveal such evidence. *See* Rule 27(a)(7) T.R.A.P.; Court of Appeals Rule 6(4). Where there is no proof as to when and how the dangerous condition came about, it would be improper to permit the jury to speculate. *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45 (Tenn. App. 1995); *Paradiso v. Kroger Co.*, 499 S.W.2d 78 (Tenn. App. 1973); *Chambliss*, 742 S.W.2d at 273.

Appellants further rely upon the theory of method of operation whereby the requirements of constructive notice may be met where a dangerous condition inside a self-service business is not an isolated one, but is reasonably foreseeable to the owner because the condition is established by a pattern of conduct, a recurring incident, or a general or continuing condition which results in injury to an invitee. *Worsham v. Pilot Oil Corp.*, 728 S.W.2d 19, 20 (Tenn. App. 1987).

In *Hale v. Blue Boar Cafeteria Co.,* an unreported opinion of this Court filed February 21, 1980, the defendant was a self-service cafeteria which was arranged so that customers selected food from a line and then carried it to tables in one of two dining areas. Although servers would come to the tables to take drink orders, there was a service stand where customers could serve themselves from a drink stand. It was a common occurrence during rush hours for spillage of drinks, ice or bits of food from dirty dishes to accumulate in varying amounts on the floor of the service area. The court noted that, as a general rule, where it cannot be shown that the defendant put a

substance on the floor, the plaintiff must show that the substance was there long enough that the defendant knew or should have known about it. The court indicated, however, that this rule applies in slip and fall cases involving a "transitory, temporary or unusual defect, condition or accumulation of foreign substances on floors." **Hale**, slip op. at 5. The court went on to say:

> However, the present lawsuit is not predicated upon a transitory, temporary or unusual circumstance which allegedly caused the injury. If a proprietor of a place of business need not have notice of a defective condition caused by it or any of its employees, it appears logical not to require notice of a hazardous situation created by the method in which the proprietor chose to operate its business. We, therefore, hold that in situations of this nature it is not a matter of knowledge in or actual or constructive notice to the proprietor. In these situations the questions are: (1) whether the condition created by the chosen method of operation constitutes a hazardous situation foreseeably harmful to others, (2) whether the proprietor used reasonable and ordinary care toward its invitees under those circumstances and (3) whether the condition created was the direct and proximate cause of the plaintiff's injury. Of course, the customer is also required to use reasonable care for his or her own safety. All these questions are issues for the jury assuming there is material evidence presented from which the jury could so find.

*Id.* at 6.

In **Bledsoe v. Delta Refining Co.**, an unreported decision filed in this Court on November 4, 1983, the plaintiff sued as a result of injuries received by him in a fall on some slippery fuel-covered concrete at the defendant's petroleum loading dock, a self-service type of operation. The plaintiff failed to prove actual or constructive notice of any fuel spillage on the part of the defendant, the trial court directed a verdict for the defendant and this Court reversed.

Fuel truck drivers would fill their tanker trucks at defendant's loading facility. The only employee of the defendant present was located in a small house at the entrance to the facility where the drivers would pick up a card to be used for the purpose of activating the computer operated pumping equipment. Gasoline, diesel fuel and jet fuel were all available at four loading lanes. The plaintiff had filled two of the three compartments in his tanker with particular grades of gasoline. In order to fill the third tank with a different grade, it was necessary for him to step up on a raised concrete island. It had been raining for sometime and he slipped on a mixture of what was testified to be spilled diesel fuel and rainwater, causing him to fall. There was evidence that as many

as 100 tanker trucks a day used this fuel loading facility. It was not desirable to mix one kind of fuel with another. Therefore, when a tank had residue from a previous load it was common practice for drivers to dump this residue onto the concrete pad. Although defendant provided a special facility for dumping, it was not used by many of the drivers. The defendant did not regularly keep an employee on duty at the loading dock for the purpose of keeping them clean but rather relied upon the truck drivers to wash down any spills with a water hose provided on each island.

Reiterating the decision in *Hale v. Blue Boar*, this Court reversed the judgment of the trial court and stated "there can be no doubt from the proof in this record that the defendant was operating a self-service petroleum-loading facility. . . . It is clear that the defendant in the case at bar chose a self-service method of marketing. Having done so, he must accept the responsibilities attendant with that method." *Bledsoe*, slip op. at 10.

We believe that *Beard v. SCOA Industries, Inc.*, No. 88-358-II, 1989 WL 60360 (Tenn. App. June 7, 1989), an unreported decision filed in the Middle Section of this Court on June 7, 1989, is analogous to the present case. There the defendant sold popcorn from a machine located near the store exit. Although there was a sign requesting that customers not take food or drink into the store, it was admitted that the policy was not enforced. Although the plaintiff did not fall, she testified that she injured herself in twisting in an effort to keep from hitting the floor and that she saw popcorn on the floor. The floors were mopped every night after the store closed and on an as needed basis throughout the day. Each department head was responsible for keeping his or her area clean and a loss prevention manager walked through the store everyday. In affirming the trial court's grant of a directed verdict on the ground that there was no proof of actual or constructive notice, this Court said:

> We hold that the *Blue Boar* rule does not apply in the present case because there is no material evidence that the defendant's method of operation created a hazardous condition. Viewed in the light most favorable to the plaintiff, the record shows that the defendant sold popcorn in the store and allowed customers to eat the popcorn throughout the store and that some popcorn spills had occurred prior to the plaintiff's accident. Unlike in *Blue Boar*, there is no evidence that spills were a common or regular occurrence. Moreover, *Blue Boar* involved liquid accumulating on the floor of a heavily trafficked area. The facts of this case do not present the level of unsafety or the regularity of recurrence evident in *Blue Boar*. The

mere possibility of occasional popcorn spills is not enough to indicate that the defendant's method of operation created a hazardous condition.

***Beard***, 1989 WL 60360, at *5.

We conclude that the evidence presented is not sufficient to go to a jury on the question of constructive notice. This was not a self-service operation. There is no evidence of a recurring incident, or a general or continuing condition which results in injury to an invitee. There is no evidence that spills were a common or regular occurrence or of the level of unsafety or regularity of recurrence that was evident in ***Blue Boar***.

The judgment of the trial court is affirmed and this cause is remanded for further proceedings consistent with this opinion. Cost are taxed to the appellants.

_____
FARMER, J.

_____
LILLARD, J. (Concurs)

_____
LEWIS, J. (Concurs)