# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

ANNETTE DUBOSE,

        Plaintiff/Appellant,

VS.

DEBBIE RAMEY,

        Defendant/Appellee.

)
)
)
)
)
)
)
)
)
)

Madison Circuit No. C-94-321

Appeal No. 02A01-9705-CV-00096

**FILED**

**December 2, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

## APPEAL FROM THE CIRCUIT COURT OF MADISON COUNTY
## AT JACKSON, TENNESSEE
## THE HONORABLE FRANKLIN MURCHISON, JUDGE

**THOMAS K. McALEXANDER**
**HILL BOREN, P.C.**
Jackson, Tennessee
Attorney for Appellant


**JONATHAN O. STEEN**
**SPRAGINS, BARNETT, COBB & BUTLER**
Jackson, Tennessee
Attorney for Appellee

**AFFIRMED**

                                            **ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

        Plaintiff/Appellant, Annette Dubose ("Dubose"), appeals the judgment of the trial

court denying her motion for a new trial and specifically finding that the jury verdict and the judgment previously entered in this case were proper and correct. For reasons hereinafter stated, we affirm the judgment of the trial court.

**Procedural History**

Dubose filed this lawsuit in the Madison County Circuit Court alleging that Debbie Ramey ("Ramey") was negligent (1) in keeping and maintaining a mix breed Chow which she knew or had reason to know had a propensity for biting and (2) in keeping an animal in an area where persons lawfully upon Ramey's property would come into contact with the dog. Dubose further alleged that Ramey was negligent in maintaining her garage in such a manner as to present a hazard to persons lawfully upon her property. Ramey filed an answer denying liability or negligence in any way and claiming that Dubose was barred from recovery under the legal doctrines of comparative fault, assumption of the risk, sudden emergency, and unavoidable accident. This case came to trial by jury on November 18, 1996, with the Honorable Franklin Murchison presiding.

At the conclusion of the trial, the jury announced a verdict finding Dubose 100% at fault. The trial court approved the verdict and entered a judgment accordingly.

Thereafter, Dubose filed a motion for a new trial on the grounds that there was no legal or material evidence to support the jury's verdict, and that the jury's verdict in the matter was contrary to the weight of the evidence presented at trial. Following a hearing on the motion for a new trial, the trial court denied Dubose's motion, finding that the jury verdict and the judgment previously entered in this case were proper and correct. This appeal ensued.

The issues on appeal are as follows: (1) Whether the trial court abused its discretion in overruling Dubose's motion for a new trial which requested relief on the basis that the jury's verdict was contrary to the weight of the evidence; and (2) whether there is material evidence to support the jury's verdict.

2

## Facts

On November 29, 1993, Dubose, along with her sister-in-law, Mrs. Dorothy Johnson ("Johnson"), came to the home of Ramey in order to present a Christmas Around the World party. This was a sales presentation whereby Dubose and Johnson displayed Christmas decorations and other merchandise to Ramey and her guests.

Dubose and Johnson rode together and arrived at Ramey's home between 6:15 and 6:30 p.m. on this day. Johnson pulled the car into Ramey's driveway without entering her garage. When Dubose arrived, Ramey's dog, Bo-Bo, began barking, and Ramey came out of her home into the garage. After quieting Bo-Bo, Ramey came to the car where Dubose and Johnson were unloading their merchandise for the party. She helped them carry the merchandise into the house. Bo-Bo was tied to the garage wall to prevent him from escaping outside into the weather, which was rainy and cold. Bo-Bo was wearing a cast on his leg from the shoulder down because he had been shot.

Ramey led Dubose and Johnson through the garage past Bo-Bo and through the door that led into Ramey's home. Ramey stopped and held Bo-Bo as Dubose and Johnson entered the house.

Approximately five guests attended the party, excluding Dubose and Johnson. Each of the guests was advised to use the front door because of Bo-Bo's ill temperament. That night, the guests at the party had numerous conversations about Bo-Bo. These conversations centered around the fact that Bo-Bo had been shot and that the guests needed to use caution around Bo-Bo. However, Dubose and Johnson contend that they heard no such conversations concerning the dog or his tendencies to be temperamental.

After the presentation was completed, Ramey helped Dubose and Johnson carry the merchandise to their car. After loading the car, Dubose realized that she had left her sweater in Ramey's home. Ramey contends that she told Dubose to stay in the car while

3

she went to retrieve the sweater. Dubose, however, insists that she heard no such utterance from Ramey. The testimony of Mrs. Betty Jones indicated that Ramey was, indeed, coming in from the garage to retrieve Dubose's sweater when the incident occurred.

Dubose entered the garage and stepped over Ramey's weed eater that was lying on the garage floor. As Dubose stepped over the weed eater, Bo-Bo growled and lunged at her. Dubose proceeded to back away from Bo-Bo, whereupon she fell over the weed eater and broke her wrist. As her left leg swung into the air, Bo-Bo bit Dubose on the leg.

Dubose was taken to the emergency room where the injury to her wrist was temporarily treated by Dr. Kelly Ballard. Thereafter, Dubose sought the advice and treatment of Dr. James Craig at The Jackson Clinic.

## Discussion

In reviewing a judgment based upon a jury verdict, this Court is not authorized to re-examine the weight of the evidence, but may set aside a jury verdict only if there is no material evidence to support the verdict. T.R.A.P. 13(d); Bynum v. Hollowell, 656 S.W.2d 400, 402 (Tenn. Ct. App. 1983); Cohen v. Cook, 462 S.W.2d 502 (Tenn. Ct. App. 1969). In determining whether there is material evidence to support the verdict, we are required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, to disregard all to the contrary, and to allow all reasonable inferences to sustain the verdict. Bynum v. Hollowell, 656 S.W.2d at 402; Budiselich v. Rigsby, 639 S.W.2d 663 (Tenn. Ct. App. 1982). If there is any material evidence to support the verdict, it must be affirmed. City of Chattanooga v. Ballew, 354 S.W.2d 806, 809 (Tenn. Ct. App. 1961); Bynum v. Hollowell, 656 S.W.2d at 402.

We will first address Dubose's contention regarding the apportionment of fault concerning her claims of negligence against Ramey as we find such issue to be dispositive of this appeal. In order to affirm the jury's verdict in favor of Ramey, the question that we must resolve is whether there is material evidence to support the jury's verdict that the fault

4

attributable to Dubose was equal to or greater than the fault attributable to Ramey. <u>Eaton v. McClain</u>, 891 S.W.2d 587 (Tenn. 1994). If so, Dubose is precluded from recovery. <u>McIntyre v. Balentine</u>, 833 S.W.2d 52 (1992). In <u>Eaton</u>, our Supreme Court set forth the following nonexhaustive list of pertinent factors to evaluate in assigning percentages of fault to each party:

> (1) The relative closeness of the causal relationship between the conduct of the defendant and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as an attempt to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth.

<u>Id.</u> at 592.

Based on the evidence presented, we conclude that the most important factor to consider is number two--whether Dubose was or should have been aware of the risk involved in entering the garage without the accompaniment of Ramey and whether such a risk was reasonable.

As mentioned above, Dubose claims that Ramey was negligent (1) in keeping and maintaining Bo-Bo, which she knew or had reason to know had a propensity for biting, and (2) in keeping Bo-Bo in an area where persons lawfully upon her property would come into contact with him. Ramey asserts comparative fault and assumption of the risk as defenses to these claims.

The doctrine of assumption of the risk, also known as <u>volenti non fit injuria</u>, is one in which a plaintiff may not recover for an injury to which he or she assents, <u>i.e.</u>, that a person may not recover from an injury received when he or she voluntarily exposes himself or herself to a known and appreciated danger. <u>See</u> <u>Perez v. McConkey</u>, 872 S.W.2d 897 (Tenn. 1994). Historically, the requirements for the defense of <u>volenti non fit injuria</u> have been that: (1) the plaintiff has knowledge of the facts constituting a dangerous condition;

5

(2) he or she knows the condition is dangerous; (3) he or she appreciates the nature or extent of the danger; and (4) he or she voluntarily exposes himself or herself to the danger. Id. With the onset of our supreme court's decision in Perez, the doctrine of implied assumption of the risk has been abrogated and maintains no independent existence. However, under the scheme of comparative fault adopted in McIntyre, the principles contained within assumption of the risk survive as factors to be considered by the jury in apportioning degrees of fault between the parties. Eaton v. McClain, 891 S.W.2d 587, 592 (Tenn. 1994).

After having stepped over the weed eater, having had Bo-Bo bark at Johnson and her when they drove up to Ramey's house, having observed Bo-Bo's size and the fact that he was placed on a cable in the garage, having seen the cast on Bo-Bo's leg and being told that he had been shot, having watched as Ramey quieted and held Bo-Bo by his collar while Dubose and Johnson passed through the garage, and having been present when Bo-Bo's ill temperament was the topic of a variety of conversations at the party, Dubose proceeded into the garage unattended by Ramey. Under the circumstances, we conclude that there was material evidence to support the jury's verdict that Dubose was equal to or greater than 50% at fault by confronting the risk of entering the garage unattended by Ramey. In view of the fact that Tennessee has adopted the doctrine of comparative fault, whether the jury found Dubose to be 100% or 50% at fault is inconsequential. There was material evidence to support the finding that Dubose, by assuming a known risk, was equal to or greater than 50% at fault and, thereby, to bar her claim for relief.

Dubose also claims that Ramey was negligent in maintaining her garage in such a manner as to present a hazard to persons lawfully upon the Defendant's property by leaving her weed eater on the garage floor. This is a claim based on premises liability.

Under premises liability, a premises owner has a duty to maintain his or her premises in a reasonably safe and suitable condition; this general duty includes the responsibility of either removing or warning against any latent dangerous conditions on the

6

premises of which the owner is aware or should have been aware through the exercise of reasonable care. Eaton v. McClain, 891 S.W.2d 587, 593-94 (Tenn. 1994); Chambliss v. Shoney's Inc., 742 S.W.2d 271 (Tenn. Ct. App. 1987); Teal v. E.I. DuPont de Nemours and Co., 728 F.2d 799 (6th Cir. 1984). The open and obvious rule is one that has been utilized in cases dealing primarily with premises liability. Historically, the open and obvious rule is one whereby an invitee can be barred from recovery for injuries resulting from a danger as readily apparent to the invitee as to the owner of the premises. With the adoption of comparative fault principles, the law concerning the effects of the open and obvious rule on a plaintiff's claim for recovery is somewhat unsettled in Tennessee. One line of cases deals with the open and obvious rule as a factor to be considered within the scheme of comparative fault. See Cooperwood v. Kroger Food Stores, Inc., No. 02A01-9308-CV-00182, 1994 WL 725217, at *2-3 (Tenn. Ct. App. Dec. 30, 1994); Broyles v. City of Knoxville, No. 03A01-9505-CV-00166, 1995 WL 511904, at *3-4 (Tenn. Ct. App. Aug. 30, 1995); Shope v. Radio Shack, No. 03A01-9508-CV-00288, 1995 WL 733885, at *2-3 (Tenn. Ct. App. Dec. 7, 1995). A separate line of cases adheres to the principle that the open and obvious rule is a complete bar to a plaintiff's claim for relief. See Jones v. Exxon Corp., 940 S.W.2d 69, 71-72 (Tenn. Ct. App. 1996); Valentine v. Weatherford, No. 02A01-9511-CV-00264, 1996 WL 741878, at *3 (Tenn. Ct. App. Dec. 31, 1996); Tracy v. Exxon Corp., No. 02A01-9512-CV-00277, 1996 WL 741876, at 2 (Tenn. Ct. App. Dec. 31. 1996); Suddath v. Parks, 914 S.W.2d 910, 914 (Tenn. Ct. App. 1995).[1]

In this case, it is undisputed that Dubose saw the weed eater when she entered the garage, and therefore, encountered an open and obvious danger.

> Question:     After you got your sister-in-law's car loaded, what happened after that?
>
> Answer:       [I] realized then that I did not have my sweater. And I said, "I'm going back and get my sweater." And I stepped across the weed eater. And as I stepped across, I looked up, the dog growled, and this--and I stopped. . .
>
> Question:     Now, when you went back in (to the garage), you stepped over the weed eater; is that right?

[1]We note that our supreme court has granted permission to appeal concerning the issue of the interpretation of the open and obvious rule in Tennessee in Coln v. City of Savannah, No. 02A01-9507-CV-00152, 1996 WL 544652 (Tenn. Ct. App. Sept. 25, 1996) perm. app. granted (Feb. 3, 1997).

Answer:     Yes, sir.

Which line of cases we follow concerning the interpretation of the open and obvious rule is of no consequence. The end result is the same. Regardless of whether the open and obvious rule is a factor to be considered under comparative fault or a complete bar to plaintiff's recovery, Dubose is barred from recovery because there was material evidence from which the jury could reasonably find Dubose equal to or greater than 50% at fault in this matter.

The trial court entered a judgment in favor of Ramey because the jury found Dubose to be equal to or greater than 50% at fault in this incident. In fact, the jury found Dubose to be 100% at fault. We affirm the judgment of the trial court denying Dubose's motion for a new trial and affirming the jury verdict because the record contains material evidence to support a verdict of equal to or greater than 50% fault on the part of Dubose. As mentioned above, in view of the fact that Tennessee has adopted the doctrine of modified comparative fault, it is of no consequence whether the jury found Dubose to be 100% at fault or 50% at fault. In any event, there was material evidence to support the jury's verdict that Dubose was 50% at fault or greater and, thereby, to bar her claim for relief.

**Denial of Motion for a New Trial**

Trial courts are afforded broad discretion in procedural matters in order to expedite litigation and to preserve fundamental rights of the parties. This Court will not reverse a discretionary judgment of the trial court unless it affirmatively appears that such discretion has been explicitly abused to great injustice and injury of the party complaining. See T.R.A.P. 36(b); Douglas v. Estate of Robertson, 876 S.W.2d 95, 97 (Tenn. 1994); Bruce v. Bruce, 801 S.W.2d 102, 107 (Tenn. Ct. App. 1990); Esstman v. Boyd, 605 S.W.2d 237, 240-41 (Tenn. Ct. App. 1980).

After an examination of the record, we find no abuse of discretion by the trial court in denying Dubose's motion for a new trial. Dubose has made no showing that the trial court abused its discretion in denying her motion for a new trial, much less an abuse that

8

rises to the level of a great injustice or injury to her. The record evinces sufficient evidence for the trial judge to deny the motion for a new trial. We affirm the action of the trial court in overruling Dubose's motion for a new trial.

_____

## Frivolous Appeal

Ramey asserts that Dubose's appeal is frivolous and that she should be awarded damages in accordance with T.C.A. § 27-1-122 (1980). We are not persuaded and do not find this appeal to be wholly insubstantial or brought solely for the purpose of delay. Accordingly, we decline to award Ramey damages for frivolous appeal.

## Conclusion

The trial court's judgment affirming the verdict of the jury and denying Dubose's motion for a new trial is affirmed. Costs are taxed to the Appellant, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
FARMER, J.


_____
LILLARD, J.

9