## IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

<table>
<tr><td>

DENNIS B. CAIRE and,
CHERYL F. CAIRE,

   Plaintiffs/Appellants.

VS.

McLEMORE FOOD STORES, INC.,
and GAS TO GO, INC.,

   Defendants/Appellees.

</td>
<td>

Shelby County Circuit Court
No. 72703-7 T.D.

C.A. No. 02A01-9804-CV-00103

</td></tr>
</table>

**FILED**

**January 15, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Circuit Court of Shelby County at Memphis
**Honorable Robert A. Lanier, Judge**

**Stevan L. Black**, Memphis, Tennessee
**Vickie L. Hardy**, Memphis, Tennessee
Attorneys for Plaintiffs/Appellants.


**John W. Leach**, SPICER, FLYNN & RUDSTROM, PLLC, Memphis, Tennessee,
Attorney for Defendant/Appellee McLemore Foods Stores, Inc.


**James W. Causey**, Memphis, Tennessee
**David S. Walker**, Memphis, Tennessee
Attorneys for Defendant/Appellee Gas to Go, Inc.

OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J.,W.S.**: (Concurs)
**TATUM, SR. J.**: (Concurs)

Plaintiffs Dennis B. Caire and his wife, Cheryl F. Caire, appeal the trial court's order which granted the motions for directed verdict made by Defendants/Appellees McLemore Food Stores, Inc., and Gas to Go, Inc., in this premises liability action. In granting the Defendants' motions for directed verdict, the trial court ruled that the Caires failed to show that the Defendants either created or had knowledge of a dangerous condition on their premises. We affirm the trial court's judgment.

At about 10:30 a.m. on Sunday, April 10, 1994, Plaintiff Dennis Caire went to one of Defendant McLemore's food stores to exchange his empty propane canister for a full canister. The propane canisters were arranged on a two-tiered storage rack which had been designed, built, and provided by Defendant Gas to Go. Each tier of the storage rack was six canisters wide and two canisters deep. Although the storage rack was located on McLemore's premises, Gas to Go owned the storage rack, and it periodically serviced the rack by delivering full propane canisters and exchanging them for empty canisters left in the rack by McLemore's customers.

Pursuant to the agreement between the Defendants, McLemore was in charge of retail sales transactions from the propane storage rack. Gas to Go allowed McLemore to decide whether or not to provide assistance to customers when they exchanged propane canisters. Because its clerks usually were busy performing other duties, McLemore chose a self-service method of operating the propane storage rack whereby customers made the exchange themselves. In accordance with McLemore's usual practice, the clerk on duty that morning provided Caire with a key to the propane storage rack so that Caire could exchange the canisters himself.

Dennis Caire had exchanged propane canisters at McLemore's food store approximately five or six times prior to the morning of April 10, 1994. On the previous occasions, Caire exchanged his empty propane canister for a full canister on the bottom tier of the storage rack without incident. This time, however, Caire planned to exchange his empty canister for a canister on the top tier because the store clerk had informed him that the top tier contained full canisters.

As he approached the storage rack, Dennis Caire first placed his empty canister on the ground. Caire then unlocked the top tier of the storage rack, raised the door or gate on the rack,

and searched for a full propane canister. After some searching, Caire located a full canister on the back row about three canisters over from where he was standing. Caire reached over and removed the empty canister directly in front of the full canister without encountering any problems. As Caire reached for the full canister on the back row, however, an empty propane canister directly in front of Caire fell out of the storage rack, landed on Caire's left foot, and crushed his big toe.

Dennis Caire and his wife, Plaintiff Cheryl Caire, subsequently filed this action against Defendants McLemore and Gas to Go. In testifying at trial, Dennis Caire insisted that he did not touch the empty canister that fell prior to the accident. His only explanation for the accident was that, as he removed the full canister from the back row, the empty canisters on the front row "became very unstable" and the canister in question "rolled out." Caire acknowledged that, instead of lowering the door to the storage rack and moving over to the location of the full canister, he had attempted to reach across several canisters while holding open the door. Caire explained that the door to the storage rack did not lock in place, and that customers were required to hold the door open while exchanging canisters. Gas to Go's president confirmed that the storage rack's design required customers to hold open the door while they exchanged canisters.

At the close of the Caires' proof, both Defendants made motions for a directed verdict. In arguing against the motions, counsel for the Caires announced that they were abandoning any allegations previously made by them to the effect that the propane storage rack was improperly manufactured. The Caires' counsel indicated that they instead were proceeding against the Defendants on a theory of common-law negligence (premises liability). After considering the arguments of all three parties, the trial court granted the Defendants' motions for directed verdict. This appeal by the Caires followed.

In ruling on the Defendants' motions for directed verdict, the trial court was required to take the strongest legitimate view of the evidence in favor of the non-moving party, the Caires. *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994). That is, the court was required to resolve any conflict in the evidence by construing it in the light most favorable to the Caires and by discarding all countervailing evidence. *Id*. The Defendants were entitled to have their motions granted only if, after assessing the evidence according to the foregoing standard, the court determined that

reasonable minds could not differ as to the conclusions to be drawn from the evidence. *Id*. If it entertained any doubt as to the proper conclusions to be drawn from the evidence, the court was required to deny the Defendants' motions and to submit the case to the jury. *Id*.

In a traditional premises liability case predicated on the defendant's negligence in allowing a dangerous or defective condition to exist on its premises, the plaintiff must proceed under one of two theories: (1) that the defendant or its agent caused or created the dangerous condition or, in the alternative, (2) that the defendant had actual or constructive notice that the condition existed prior to the plaintiff's injury. *Hardesty v. Service Merchandise Co.*, 953 S.W.2d 678, 682 (Tenn. App. 1997); *Chambliss v. Shoney's Inc.*, 742 S.W.2d 271, 273 (Tenn. App. 1987); *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d 560, 563 (Tenn. App. 1985). In this appeal, the Caires contend that the trial court erred in directing a verdict in favor of the Defendants because the Caires presented evidence from which the jury could have found that the Defendants' method of operation created a hazardous situation which was foreseeably harmful to others. Specifically, the Caires contend that this evidence showed that the Defendants chose to conduct the propane canister exchange as a self-service operation and did not take reasonable precautions to protect their customers from the foreseeable dangers caused or created by such an operation.

The theory advanced by the Caires in this case has been recognized by the courts of this state as the "method of operation" theory of premises liability. *Martin v. Washmaster Auto Ctr.*, 946 S.W.2d 314, 319 (Tenn. App. 1996). Under this theory, a proprietor may be held liable for injuries to a customer if the proprietor's chosen method of operation creates a hazardous condition which causes foreseeable harm to the customer. *Id*. at 320 (citing *Hale v. Blue Boar Cafeteria Co.*, slip op. at 6 (Tenn. App. Feb. 21, 1980)). For example, "[w]here a proprietor knows or has reason to know that his customers are regularly dropping hazardous debris on his floor or steps, . . . the proprietor must take reasonable precautions to protect customers" against injury from such a hazard. *Friar v. Kroger Co.*, No. 03A01-9710-CV-00470, 1998 WL 170140, at *4 (Tenn. App. Apr. 14, 1998) (quoting *Self v. Wal-Mart Stores, Inc.*, 885 F.2d 336, 339 (6th Cir. 1989)).

In order to prevail under the method of operation theory, a plaintiff must show (1) that the proprietor's chosen method of operation created a hazardous condition which was foreseeably

harmful to others, (2) that the proprietor failed to use reasonable and ordinary care to protect his customers from the hazardous condition created by his method of operation, and (3) that the hazardous condition directly and proximately caused the plaintiff's injury. *Martin v. Washmaster Auto Ctr.*, 946 S.W.2d at 320 (citing *Hale v. Blue Boar Cafeteria*, slip op. at 6). Previous decisions of this court indicated that this three-part test omitted the notice requirement of premises liability cases under the rationale that the defendant, by its chosen method of operating its business, created the hazardous condition and, thus, needed no notice of it. *Maxwell v. Red Food Stores, Inc.*, 1988 WL 95273, at *4 (Tenn. App. Sept. 16, 1988); *Bledsoe v. Delta Ref. Co.*, slip op. at 9 (Tenn. App. Nov. 4, 1983); *Hale v. Blue Boar Cafeteria Co.*, slip op. at 7 (Tenn. App. Feb. 21, 1980). In contrast, more recent decisions have discussed the theory in terms of constructive notice. These cases indicate that, under the method of operation theory, "the requirements of constructive notice may be met where a dangerous condition inside a self-service business [is] not an isolated one but is reasonably foreseeable to the owner because the condition is established by a pattern of conduct, a recurring incident or a general or continuing condition." *Martin v. Washmaster Auto Ctr.*, 946 S.W.2d at 320 (quoting *Worsham v. Pilot Oil Corp.*, 728 S.W.2d 19, 20 (Tenn. App. 1987)); *accord Wilson v. Target Stores, Inc.*, No. 03A01-9209-CV-00322, 1993 WL 30617, at *3 (Tenn. App. Feb. 10, 1993); *Beard v. SCOA Indus., Inc.*, 1989 WL 60360, at *4 (Tenn. App. June 7, 1989); *see also Beske v. Opryland USA, Inc.*, 923 S.W.2d 544, 546 (Tenn. App. 1996). Regardless of how courts view method of operation claims, such claims are premised on two key elements: the existence of a dangerous or hazardous condition and the foreseeability of harm to the plaintiff. *See Martin v. Washmaster Auto Ctr.*, 946 S.W.2d at 321; *Friar v. Kroger Co.*, 1998 WL 170140, at *3; *Wilson v. Target Stores*, 1993 WL 30617, at **2-3; *Beard v. SCOA Indus.*, 1989 WL 60360, at *5; *Maxwell v. Red Food Stores*, 1988 WL 95273, at *4; *see also Schnuphase v. Storehouse Mkts.*, 918 P.2d 476, 479 (Utah 1996).

Although the method of operation theory of premises liability is recognized by the courts of this state, we reject the Caires' argument that the theory is applicable to this case. In determining whether the method of operation theory applies to the facts of a given case, recent decisions of this court have focused on whether the evidence shows "a pattern of conduct, a recurring incident or a general or continuing condition indicating the dangerous condition's existence." *Martin v. Washmaster Auto Ctr.*, 946 S.W.2d at 320. The majority of these cases involved a

plaintiff who slipped and fell on a substance spilled by another customer. In determining the applicability of the method of operation theory, this court examined whether such spills were a common or regular occurrence in the defendant's business. *See Beske v. Opryland*, 923 S.W.2d at 546 (beverage spilled at entrance to turnstiles in theme park); *Worsham v. Pilot Oil Corp.*, 728 S.W.2d at 20-21 (ice spilled near self-service drink dispensing machine); *Beard v. SCOA Indus.*, 1989 WL 60360, at \*1, \*5 (popcorn spilled on floor of department store); *see also DeGrood v. Crook's Supermarket, Inc.*, No. 01A01-9701-CV-00031, 1997 WL 671992, at \*1, \*4 (Tenn. App. Oct. 29, 1997) (ice cream from sample distributed in food promotion spilled on floor of grocery store).

In our view, the case of *Wilson v. Target Stores, Inc.*, No. 03A01-9209-CV-00322, 1993 WL 30617 (Tenn. App. Feb. 10, 1993), is more analogous to the present situation than the foregoing slip-and-fall cases. In that case, the plaintiff was shopping at one of the defendant's stores when several ironing boards standing on end fell from a shelf, striking the plaintiff in the head and knocking her to the ground. *Wilson v. Target Stores*, 1993 WL 30617, at \*1. The evidence was unclear as to why the ironing boards fell from the shelf. The plaintiff testified that there was a six-to eight-inch fence or border at the bottom of the shelf where the ironing boards were located. *Id*. The plaintiff denied touching the merchandise prior to the accident, and no proof was presented that anybody else had touched the ironing boards. *Id*. In defending the action, the store manager testified that "he [had] been employed in the retail business for twenty years," that "the ironing boards were set up on the date in question in a display similar to every store in which he [had] ever worked," that "retailers [presented] the merchandise in that way to make it easier for the customer to view . . . the merchandise," and that "[h]e had never heard of ironing boards falling in this way before." *Id*.

In rejecting the application of the method of operation theory to the facts of the case, the court reasoned:

> In the instant case the proof on the part of plaintiff as to the incident which caused her alleged damages consisted of testimony of plaintiff and her shopping companion that the ironing boards fell on the plaintiff. The proof established however, that the ironing boards were stacked on a shelf with a fence or border holding them in place and that this method was used in all of defendant's other business locations without any incidents such as this occurring. Apparently

> plaintiff conducted no discovery proceedings in this case, and apparently made no attempt to prove that the defendant was negligent in the manner it set-up or maintained this display of the ironing boards. Plaintiff further failed to present any proof that defendant had any type of notice of a prospective dangerous or defective condition which might cause injury. There simply is no proof that it was reasonably foreseeable to [the defendant] that a dangerous condition existed due to a pattern of conduct, recurring incident or a general or continuing condition.

*Wilson v. Target Stores*, 1993 WL 30617, at *3.

Similarly, the evidence in the present case fails to show a pattern of conduct, a recurring incident, or a general or continuing condition indicating that the Defendants' self-service method of operation created a dangerous condition. Dennis Caire testified that an empty propane canister fell on him while he was reaching for a full propane canister. Other than perhaps his own negligence, however, the proof failed to establish what caused the empty propane canister to fall on Caire. No evidence was presented that Caire's injury was caused by the negligence of another customer or by the Defendants' negligent set-up or maintenance of the storage rack. Moreover, the record contains no evidence that any other customer or customers had been injured due to a propane canister falling from the storage rack. In fact, the record contains no evidence that any customer ever had been injured while using the storage rack to exchange propane canisters. Inasmuch as the Caires failed to present evidence that the Defendants' chosen method of operation created a hazardous situation which was foreseeably harmful to others, we hold that the trial court properly directed a verdict in favor of the Defendants on this theory.

Although not crucial to our holding, we additionally observe that some jurisdictions have limited the application of the method of operation theory to situations in which the dangerous condition is caused by the foreseeable negligence of a third party, such as another customer. *See Chiara v. Fry's Food Stores, Inc.*, 733 P.2d 283, 286 (Ariz. 1987) (in banc) (holding that, in method of operation case, plaintiff must demonstrate foreseeability of "third-party interference"); *Brock v. Richmond-Berea Cemetery Dist.*, 957 P.2d 505, 513 (Kan. 1998) (holding that method of operation exception is limited to certain situations in which record contains evidence of "independent negligence" on part of "third person"); *Canfield v. Albertsons, Inc.*, 841 P.2d 1224, 1226 (Utah Ct. App. 1992) (indicating that method of operation rule applies where foreseeable acts of "third parties"

create dangerous condition), *cert. denied*, 853 P.2d 897 (Utah 1993). We believe that such a limitation is particularly appropriate in the context of self-service operations. In one of our early method of operation decisions, this court explained the rationale for applying the method of operation theory to self-service businesses:

> In a self-service operation, [a business] owner has for his pecuniary benefit required customers to perform the tasks previously carried out by employees. Thus, the risk of items being dangerously located on the floor, which previously was created by the employees, is now created by other customers. But [it] is the very same risk and that risk has been created by the owner by his choice of mode of operation. He is charged with the creation of this condition just as he would be charged with the responsibility for negligent acts of his employees.

*Bledsoe v. Delta Ref. Co.*, slip op. at 8 (Tenn. App. Nov. 4, 1983) (quoting *Ciminski v. Finn Corp.*, 537 P.2d 850, 853 (Wash. Ct. App.), *review denied*, 86 Wash. 2d 1002 (1975)).; *see also Beske v. Opryland USA, Inc.*, 923 S.W.2d 544, 546 (Tenn. App. 1996) (summarizing court's holding in *Bledsoe v. Delta Ref. Co.* that operator of self-service facility must exercise due care to protect its patrons from hazards created by "other patrons" as result of self-service manner of operation); *Friar v. Kroger Co.*, No. 03A01-9710-CV-00470, 1998 WL 170140, at **3-4 (Tenn. App. Apr. 14, 1998) (describing method of operation theory as one which requires proprietor who knows or has reason to know that "his customers" regularly drop hazardous debris to take reasonable precautions to protect other customers from such hazard).

In the present case, the Caires criticized the self-service method of operation which McLemore chose and which Gas to Go permitted to exist on McLemore's premises, but the Caires presented no evidence that Dennis Caire's injury was caused by the acts of another customer or any other third party. In our view, this circumstance presents an additional reason for declining to apply the method of operation theory to the facts of this case.

The trial court's judgment is affirmed. Costs of this appeal are taxed to the Caires, for which execution may issue if necessary.

_____
FARMER, J.

_____

CRAWFORD, P.J., W.S. (Concurs)


_____

TATUM, Sr. J. (Concurs)