# IN THE COURT OF APPEALS OF TENNESSEE

# FILED

December 17, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

## AT NASHVILLE

| | | |
|---|---|---|
| WANDA FAYE JONES, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | Appeal No. |
| | ) | M1998-00490-COA-R3-CV |
| VS. | ) | |
| | ) | Davidson Circuit |
| | ) | No. 97C-1845 |
| HCA HEALTH SERVICES OF | ) | |
| TENNESSEE, INC., | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

APPEALED FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE HAMILTON V. GAYDEN, JR., JUDGE


JACK A. BUTLER
315 Deaderick Street
Nashville, Tennessee 37238-2395

KARLA C. HEWITT
211 Donelson Pike, Suite 4
Nashville, Tennessee 37214
      Attorneys for Plaintiff/Appellant

C.J. GIDEON, JR.
MARGARET MOORE
414 Union Street

Nashville, Tennessee 37219-1782
        Attorneys for Defendant/Appellee


AFFIRMED AND REMANDED


BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
COTTRELL, J.

# O P I N I O N


The plaintiff injured her back when she slipped and fell in the entranceway to a medical office building owned by the defendant. She claimed that the defendant had allowed water to collect on the floor of the entranceway, creating a dangerous condition that caused her injury. The defendant filed a Motion for Summary Judgment, contending that it did not have notice of the allegedly dangerous condition. The trial court granted the motion. We affirm.

**I.**


Wanda Faye Jones had scheduled a doctor's appointment at Family Practice Associates for 8:15 on the morning of December 31, 1996. The practice group's offices were located in Building C at Southern Hills Medical Center. It had drizzled the night before, and was still cloudy with misty rain that morning. After parking her car at about 8:05 a.m., Ms. Jones walked to the doors of Building C. She entered the building, and almost immediately slipped and fell on the floor of the

vestibule. She testified in deposition that after she fell, she noticed that she was lying in muddy water that was about half an inch deep, and that it pooled over most of the tile floor.

Ms. Jones was quite shaken by her fall, but with the help of two ladies who were passing by, she was able to get up and to walk to her doctor's office. The doctor advised her to go to the emergency room. The emergency room doctor took some x-rays, and told her to take Advil and to alternate the application of heat and cold to her back. Though she followed these recommendations, she continued to suffer back pain. On January 15, another doctor examined the x-rays from the emergency room visit and told her that they revealed possible compression fractures. Ms. Jones is still under treatment for her back pain.

On June 11, 1967, she filed a complaint against HCA Health Services of Tennessee, Inc., as the owner or operator of the Southern Hills Medical Center complex. She claimed that she fell because of the water on the floor, and that the defendant had negligently failed to keep the premises in a reasonably safe condition. The defendant answered, and filed a Motion for Summary Judgment accompanied by supporting affidavits. HCA claimed that it did not have any notice of any accumulation of water in the entranceway of Building C prior to the plaintiff's fall. Ms. Jones filed a response to the motion, in which she claimed that the defendant should be deemed to have had constructive notice of the condition. The trial court granted the defendant's motion. This appeal followed.

## II.

In order to prevail in a premises liability case, the injured party must prove that the defendant had notice of the dangerous condition that caused her injury. *Ogle v. Winn-Dixie*, 919 S.W.2d 45 (Tenn. Ct. App. 1995). Actual notice may be proven if the plaintiff can show that the defendant itself caused or created the dangerous condition, or in the event that it was created by somebody else, that its agents or employees actually observed the condition but failed to correct it. The plaintiff in this case concedes that the defendant did not have actual notice that water was present on the floor in the entranceway to Building C.

In the absence of actual notice, a plaintiff may prevail by proving constructive notice: that is, by showing that the dangerous condition existed for such a length of time that in the exercise of ordinary care, the defendant knew, or should have known, of its existence. *Allison v. Blount National Bank*, 390 S.W.2d 716 (1965).

At the summary judgment phase of the case, the plaintiff is not required to prove that the defendant had constructive notice; but she must present sufficient evidence as to how long the condition existed on the defendant's premises to create a genuine issue of material fact on the question of constructive notice. If there is a complete lack of proof as to how the dangerous condition came into being, or how long it existed, it is improper to permit the jury to speculate about these vital

elements. *Chambliss v. Shoney's Inc.*, 742 S.W.2d 271 (Tenn. Ct. App. 1987).

The record shows that at 5:00 a.m. on the morning of December 31, 1996, a member of the security staff unlocked the sliding glass doors to Building C, but did not notice any water in the vestibule between the front entranceway and the second set of doors beyond it.  At 5:22 a.m., the same guard did a routine walkthrough of Building C, and again no water was noted in the entranceway. The guard briefed her supervisor at 6:30 a.m. on the events that occurred during her shift.  The doctors at Family Practice Associates began seeing patients at 6:45 a.m. Between 6:45 and 8:15 a.m., they saw 11 patients.  All of the patients had to enter the building through the same entranceway as did the plaintiff.  None of them reported any water at or near the entranceway.

The plaintiff claims that because of the wet weather, it was likely that patients would track water into the entranceway, and that in the exercise of reasonable care, the defendant should have anticipated that the vestibule would become wet and therefore should have taken precautions to keep it dry and safe. She relies on the case of *Allison v. Blount National Bank*, 390 S.W.2d 716 (Tenn. 1965), which was the first Tennessee case to impose liability upon a business establishment for injuries caused by water tracked in by its customers.

However, the plaintiff in the *Allison* case testified that after she fell she could see evidence that water had been tracked into the lobby by prior customers,

and the manager subsequently observed a film of water on the floor. In the present case, the plaintiff herself testified that she saw no evidence as to how the water could have entered the vestibule, though she speculates that her case, like the Allison case, involved "trackage."

Ms. Jones' testimony establishes that the entranceway to Building C is totally enclosed, and is fronted by a sidewalk that requires a visitor to take a step up before entering the building. Further, a canopy extends over both the sidewalk and a drive-through which shelters patients who are being dropped off at the entrance. The pavement and sidewalk both slope away from the entrance. Ms. Jones testified that the parking lot was dampened but not soaked. Thus the conditions do not appear to have existed for a large quantity of water to have been tracked into the vestibule; yet Ms. Jones insisted that the water inside the vestibule was half an inch deep, and denied several times that she was exaggerating.

If we take the plaintiff's allegations as true, we must conclude that we are not dealing with a small quantity of liquid that was tracked in on the shoes of patients and visitors, but a far larger quantity that appeared from some unknown source. However, there is absolutely no evidence in the record of any leaks into the building, any plumbing problems, or any spills that could account for the water in the vestibule. There is also no proof as to how long the water was there before Ms. Jones encountered it. The plaintiff has therefore failed to produce any evidence that would create a genuine question of material fact on the question of constructive

notice, and the trial court was correct in granting summary judgment to the defendant.

## III.

The judgment of the trial court is affirmed. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:



_____
WILLIAM C. KOCH, JR., JUDGE



_____
PATRICIA J. COTTRELL, JUDGE