**J.H. EDWARDS, Plaintiff-Appellant,**

v.

**INTERNATIONAL HARVESTER COMPANY, Gallatin Truck Sales, Inc., Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section, at Nashville.

Jan. 24, 1985.

Application for Permission to Appeal Denied by Supreme Court March 25, 1985.

Gary D. Copas, Lebanon, for plaintiff-appellant.

Noel F. Stahl, Nashville, for Intern. Harvester Co.

William P. Sutherland, Nashville, for Gallatin Truck Sales, Inc.

NEARN, Presiding Judge, Western Section.

Plaintiff filed suit against International Harvester Company, a manufacturer of trucks and its dealer, Gallatin Truck Sales, Inc. The complaint, in essence, charged that plaintiff purchased a new International Truck for use in his business that was not as represented and, in short, turned out to be a "lemon." On motion of the defendants at the close of the plaintiff's proof, the Trial Judge directed verdicts for all defendants and plaintiff has appealed.

Counsel for appellant lists five issues on appeal. They are redundant. As we perceive the case there are only two issues, *viz.:*

1. Whether there is material evidence presented by the record of misrepresentations of the defendants so as to withstand a motion for directed verdict, and, if so,

2. Whether the Trial Judge erred in excluding evidence of damages proferred by the plaintiff?

In part, we answer both issues in the affirmative.

In ruling on a motion for a directed verdict made at the close of the plaintiff's proof, it is the duty of the Trial Court and this Court to

take the strongest legitimate view of the evidence in favor of the plaintiff, allow all reasonable inferences to be drawn therefrom in his favor, discard all countervailing evidence and deny the motion if there is any doubt as to the conclusions to be drawn from the whole evidence; a verdict should be directed only if reasonable minds could draw but one conclusion. *Sauls v. Evans,* (1982 Tenn.) 635 S.W.2d 377, 379.

The record reveals that plaintiff is in the business of hauling rock and/or asphalt for hire. He had been self employed in that business for approximately thirty-three years prior to purchasing the truck in question. Previously, plaintiff had been financially able to purchase only used trucks for his one man business. However, over the years, by operating frugally and developing a decent credit rating with the bank, he finally found himself, with the aid of bank credit, in a position where he could buy his first new truck. Having heard from others in the rock hauling business that International Harvester manufactured a "good" truck for his purposes, he obtained brochures published by International Harvester and went to its dealer, Gallatin Truck Sales, to see about purchasing a truck.

From the record, it appears that purchasing heavy duty trucks for hauling is not ordinarily accomplished in the same manner as buying an automobile or a simple pick-up truck, that is to say, one does not usually walk out to a lot full of trucks designed for a particular purpose and choose the finished product. Because of the various particular uses to be made by the user of the product, International builds the cabs and frames of the vehicles with various numbers of rear axles so that the user may select the proper vehicle for the load required and then have someone else build and install the type of truck bed best suited for the items to be hauled or transported. The brochure, published by International, upon which plaintiff testified he relied, provided, after touting several models of its trucks:

> You'll get more than a good deal on a cost-cutting truck. You get the help of a dealer who's an expert at matching the right truck to your specific needs—and after the sale, you've got the largest, most complete, most experienced parts and service system in the industry.

Plaintiff testified that he did as the brochure suggested and went to the "expert" dealer to help him match the right truck to his needs. He took with him a form furnished by the state of Tennessee for licensing purposes which pictured in diagram form trucks with various numbers of axles and bed configurations indicating maximum gross weight for each style. Plaintiff testified that he showed this form to the salesman and indicated he desired to purchase a truck with a 68,000 pound capacity. The diagram for such a truck indicated one with three axles under the bed. Gallatin did not have in stock such a three axle vehicle, but did have a two axle vehicle. Plaintiff testified that Gallatin's salesman informed him that an additional axle and a rock/asphalt type and size bed could be installed by Rogers Manufacturing Company, which was in the business of doing such work. Gallatin then called Rogers to determine the size bed needed for the intended use. Plaintiff agreed to purchase the diesel truck from Gallatin with alterations made by Rogers. The alteration contract was a separate contract between plaintiff and Rogers, which is not a party to this action.

The truck as altered suffered numerous breakdowns and the plaintiff testified to a lengthy litany of woes with the truck following its purchase. Plaintiff's proof shows that International, through Gallatin, performed much warranty work on the engine and power steering to no avail. The proof shows that the truck, after its last mishap, had no value other than as salvage or junk. Plaintiff testified that because of the numerous repairs, he suffered much "down time" and was unable to use the truck for hauling when it was either in for repairs or simply not operable; plaintiff testified the truck's problems caused him considerable loss of income.

The record clearly shows that the Trial Judge directed a verdict for the defendants on the ground that plaintiff had not properly proved any ascertainable damages.

▆▆▆▆ Regardless of the proof of damages issues, it is the insistence of International that the action of the Trial Judge was correct because the only misrepresentations with which the plaintiff charged International were regarding the expertise of the dealers who sold International prod-

ucts and the alleged agency relationship between Gallatin and International. International was not charged with breach of warranty actual or implied. Its liability was sought to be established through its alleged misrepresentation regarding the expertise of its alleged agent, Gallatin. We must agree with the position taken by International Harvester. There is absolutely no proof in the record that the salesmen working for Gallatin Truck Sales were not experts as represented in International's brochure. What plaintiff's evidence tended to prove was that, in this instance, a Gallatin salesman failed to match plaintiff with the right truck for his needs. Even experts are capable of error and the fact that an expert has erred does not of itself render the erring party a non-expert or unqualified. *See McElroy v. Boise Cascade Corp.*, (1982 Tenn.App.M.S.) 632 S.W.2d 127, 131.

■ Nor is there any proof in this record that Gallatin Truck Sales was the agent of International. Both defendants admit that there is a dealership relationship, but that does not equal an agency relationship. An important element of an agency relationship is that "the object of the contract be for the benefit of the principal.... [T]he principal test of agency is whether the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent." *Nidiffer v. Clinchfield Railroad Co.*, (1980 Tenn.App.E.S.) 600 S.W.2d 242, 245. Plaintiff failed to put on any proof that Gallatin Truck Sales sold International Trucks for the sole benefit of International Harvester and, indeed, plaintiff would have found it impossible to do so. As long as Gallatin paid International for its trucks, Gallatin could have destroyed the trucks or put them on a back lot forever.

This case is distinguishable from *American Buildings Co. v. White*, (1982 Tenn. App.W.S.) 640 S.W.2d 569, in that the dealer in *White* was found to be an agent of the manufacturer because first, the manufacturer's brochure represented him as such and second, the brochure promised that the *manufacturer* would design the proper product with the information furnished by its dealer and with his assistance. Further, the brochure in *White* promised that the *manufacturer* would design a product that would custom fit the buyer's needs. In this case there is no proof that International ever represented that it would design anything for plaintiff's particular use. Therefore, we must affirm the dismissal as to International Harvester.

■ As to Gallatin Truck Sales, plaintiff alleged that the dealer was guilty of negligent misrepresentation, breach of express warranty and breach of implied warranty of fitness for a particular purpose. Plaintiff testified that Jake Warden, an employee of Gallatin, assisted him in choosing and buying the International truck and that after plaintiff had informed him that he needed a three axle truck with a custom bed to haul crushed stone, Mr. Warden replied that the International truck he was purchasing would go anywhere and do anything he wanted, within reason. Plaintiff testified that he relied on this representation and that, further, Mr. Warden made the arrangements with Rogers Manufacturing Company to install the custom bed.

T.C.A. § 47-2-315 (Supp.1984) provides, in relevant part:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is ... an implied warranty that the goods shall be fit for such purpose.

We conclude that, based on plaintiff's proof, reasonable minds could differ on the issue of Gallatin's alleged breach of implied warranty of fitness for a particular purpose.

Turning now to the issue of damages, the Trial Judge's conclusion was that the plaintiff's offer of proof on damages was speculative and uncertain. Because of this conclusion, the Trial Judge denied the plaintiff's motion to admit into evidence proof of what money he made when he

owned a fully operational truck and what he made during the period he owned this International truck in order to show a loss of $32,000.00.

 The appellant in the case of *Ford Motor Company v. Taylor*, (1969 Tenn. App.M.S.) 60 Tenn.App. 271, 446 S.W.2d 521, complained that similar evidence presented in that case was too speculative to support a verdict just as the appellee in this case insists that such evidence is too speculative to warrant admission. The Court's observations about the proof regarding damages in the *Ford v. Taylor* case apply, in like manner, to plaintiff's proof of damages in this case:

> Plaintiff supported his estimate with factual information from his own experience and that of others. Testimony about prospective profits must to some degree be the result of estimation, but where, as in this case, it is supported by factual information and uncontradicted, it is sufficient to justify a recovery.

Just as in *Ford*, the appellee in this case insists that all elements of profit and loss were not taken into consideration in the proof proffered by plaintiff and, therefore, plaintiff's proof was inadmissible. Again, we concur with the *Ford* Court that such an argument is meritless.

> This complaint goes to the weight and not the admissibility of the evidence. The finder of fact is under a duty to make its own estimate of the actual damages sustained rather than to mechanically accept the estimate of a particular witness.

Also, in *Cummins v. Brodie*, (1983 Tenn. App.M.S.) 667 S.W.2d 759, at 765 the Court held:

> Uncertain and speculative damages are prohibited only when the existence of damage is uncertain, not when the amount is uncertain. When there is substantial evidence in the record and reasonable inferences may be drawn from that evidence mathematical certainty is not required.

The existence of damages to the plaintiff is shown by this record and the evidence should have been admitted.

The result is that we affirm the dismissal of International but reverse the judgment of the Trial Court dismissing with prejudice plaintiff's claim against Gallatin Truck Sales, Inc., and remand the case for a new trial consistent with this opinion. The judgment for International Harvester is affirmed.

Costs are assessed against Gallatin Truck Sales, Inc.

Done at Nashville in the two hundred and ninth year of our Independence and in the one hundred and eighty-ninth year of our Statehood.

TOMLIN and CRAWFORD, JJ., concur.