IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 15, 2009  Session

## ROSTIS N. TIMOSHCHUK, ET AL. v. LONG OF CHATTANOOGA MERCEDES-BENZ, ET AL.

Appeal from the Circuit Court for Hamilton County
No. 06C-472      W. Jeffrey Hollingsworth, Judge

No. No. E2008-01562-COA-R3-CV  - FILED OCTOBER 8, 2009

The plaintiffs filed a lawsuit after discovering damage to a Mercedes-Benz that had been represented to them as a new vehicle.  The trial court granted summary judgment dismissing plaintiffs' Tennessee Consumer Protection Act claim against all defendants and  plaintiffs' breach of contract and warranty claims against defendant Mercedes-Benz USA.  The plaintiffs appeal.  We affirm.

**Tenn. R. App. P.  3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, PJ.,  and D. MICHAEL SWINEY, J., joined.

Christopher D. Markel and Adam S. Major, Chattanooga, Tennessee, for the Appellants, Rostis N. Timoshchuk and Nikolay Timoshchuk.

Hal F.S. Clements and Neil A. Brunetz, Chattanooga, Tennessee, for the Appellee, Long of Chattanooga Mercedes-Benz.

Linda J. Hamilton Mowles and Mary Ann Stackhouse, Knoxville, Tennessee, for the Appellee, RBM of Atlanta, Inc.

Daniel P. Berexa and J. Matthew Blackburn, Nashville, Tennessee, for the Appellee, Mercedes-Benz USA, LLC.

### OPINION

### I.  BACKGROUND

On August 24, 2005, Rostis Timoshchuk ("Timoshchuk") purchased a Mercedes SL500 ("vehicle") for $108,325.49 from Long of Chattanooga Mercedes-Benz ("Long").  Because Long initially did not have the correct vehicle in stock, RBM, LLC ("RBM"), a Mercedes-Benz dealership

of Atlanta, Georgia, transferred the car to Long. Before the purchase, Timoshchuk was informed that the car had 756 miles on the odometer. He acknowledged the mileage and signed an odometer statement on the day of purchase. However, Timoshchuk was not specifically told that the 756 miles was the result of the discretionary use of the vehicle by RBM's General Manager and General Sales Manager. Nevertheless, there is no allegation that the discretionary use of the vehicle caused any damage.

It is undisputed that Long represented the vehicle as a "new" vehicle. Significantly, the Certificate of Origin, Certificate of Title, and CarFax Report all state that Timoshchuk was the first retail purchaser of the vehicle. Additionally, RBM submitted the sworn affidavit of Steven G. Kleinschmidt, the Controller for RBM, which shows that RBM was the original dealer for the vehicle and Long was the only purchaser of the vehicle. A certified copy of the title history reveals that Mercedes-Benz USA, LLC ("MBUSA") conveyed the vehicle, by a certificate of origin, to RBM on November 19, 2004. In August 2005, RBM sold the vehicle to Long, and Long sold the vehicle to Timoshchuk.

About four months after the purchase, Timoshchuk noticed that the paint on the vehicle's trunk appeared slightly discolored in certain lighting conditions. Through his own investigation, he learned that the vehicle's trunk had been repainted. Timoshchuk contacted Long about the defect, and Long assured him that the vehicle was new. Nevertheless, at Timoshchuk's request, Long asked RMB if the vehicle had been previously damaged. Initially, RBM denied any damage. Long then performed a paint strip test on the trunk and determined that the trunk was repainted. After Long presented RBM with the test results, RBM finally admitted that the vehicle's trunk suffered minor damage while in transit from its port-of-entry to RBM. RBM further admitted that it had engaged Sports and Imports Collision of Gwinnett County to repair and repaint the trunk for $650.43. Of the $650.43, the painting costs were $377.00. It is undisputed that RBM did not inform Long of the damage to the trunk, nor did it include this information in the "STAR" network that MBUSA uses to track such events.

Before learning the results of Long's investigation, Timoshchuk contacted MBUSA to make a claim under the vehicle's warranty. An MBUSA representative allegedly told Timoshchuk that he had purchased a used car with a used car warranty. Additionally, a one page "Customer Assistance Referral" document produced in discovery shows that the representative's call notes indicated that "Fastracc shows a previous owner in the system. . . ." Timoshchuk points out that the one page "Mercedes-Benz USA Campaign Information" document provided by MBUSA in discovery shows that the previous owner of the vehicle was located in Cumming, Georgia.

MBUSA distributes Mercedes vehicles to authorized dealers in the United States. MBUSA does not sell vehicles directly to members of the public. Long and RBM are authorized retailers of vehicles distributed by MBUSA. The dealers are legal entities separate from MBUSA. The standard Mercedes-Benz Passenger Car Dealer Agreement clearly states that an authorized dealer is not an agent or representative or MBUSA. The Agreement provides, in pertinent part:

DEALER NOT AN AGENT OR REPRESENTATIVE

> Dealer is in independent business. This Agreement does not constitute Dealer [*sic*] the agent or legal representative of MBUSA or DCAG for any purpose whatsoever. Dealer is not granted any expressed or implied right or authority to assume or create any obligation on behalf of or in the name of MBUSA or DCAG or to bind MBUSA or DCAG in any manner whatsoever.

Shortly after Timoshchuk's conversation with the MBUSA representative, Long informed Timoshchuk of RBM's admission that the trunk had been damaged before it was transferred to Long. RBM, through Long personnel, offered to repair or replace the trunk lid free of charge. Timoshchuk refused and demanded to return the vehicle. Long refused the return and Timoshchuk then filed this action.[1] In the Original Complaint, Timoshchuk alleged fradulent misrepresentation, negligence, and violations of the Tennessee Consumer Protection Act ("TCPA") against Long and MBUSA. Subsequently, Timoshchuk filed an Amended Complaint adding as a defendant RBM and asserting unjust enrichment and breach of warranty as additional claims. Each defendant filed Motions for Summary Judgment.

Following a hearing, the trial court entered an order on February 29, 2008. In that order, the trial court dismissed all claims against MBUSA; dismissed the TCPA claim against Long and RBM; dismissed the unjust enrichment claims against Long and RBM; and denied the motions regarding Timoshchuk's claim for breach of warranty. Inter alia, the trial court found that the vehicle sold to Timoshchuk was a new vehicle under Tennessee law and that RBM complied with Georgia law in regard to its decision not to disclose the trunk lid repair when it sold the vehicle to Long. On June 16, 2008, Timoshchuk non-suited the remaining warranty claims against Long and RBM.

## II. STANDARD OF REVIEW

Tenn. R. Civ. P. 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993).

In *Hannan v. Alltel Publ's Co.*, 270 S.W.3d 1 (Tenn. 2008), the Tennessee Supreme Court clarified the moving party's burden of proof in a summary judgment motion. A moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2)

---

[1] Although Rostis and Nikolay Timoshchuk are both plaintiffs in this suit, Nikolay's only role is as a co-signer on the loan. Because all other actions in the case were performed by Rostis Timoshchuk, he alone will be referred to as "Timoshchuk" for the sake of simplicity.

show that the nonmoving party cannot prove an essential element of the claim at trial. *Id.* at 8-9. According to the Court, when a party seeking summary judgment has made a properly supported motion, the burden shifts to the non-moving party to set forth specific facts establishing the existence of disputed, material facts, which must be resolved by the trier of fact. *Id.* at 5*; see Byrd*, 847 S.W.2d at 215; *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). The non-moving party may not simply rest upon the pleadings, but must offer proof by affidavits or other discovery materials (depositions, answers to interrogatories, and admissions on file) to show that there is a genuine issue for trial. If the non-moving party does not so respond, then summary judgment, if appropriate, shall be entered against the non-moving party. Tenn. R. Civ. P. 56.06.

There is no presumption of correctness for summary judgments on appeal. *See Nelson v. Martin*, 958 S.W.2d 643, 646 (Tenn. 1997); *City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997). This court must view all of the evidence in the light most favorable to the non-movant and resolve all factual inferences in the non-movant's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox County Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). When the undisputed facts, however, support only one conclusion, then the moving party is entitled to judgment as a matter of law and a summary judgment will be upheld. *See White v. Lawrence,* 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## III.  ISSUES

The issues presented for review have been restated as follows:

A.  Whether the trial court erred in dismissing the Tennessee Consumer Protection Act claims against all defendants.

B.  Whether the trial court erred in dismissing the breach of contract and breach of warranty claims against Mercedes-Benz USA, LLC.

## IV.  DISCUSSION

### A.

Timoshchuk contends that the trial court erred in dismissing the Tennessee Consumer Protection Act claim against the defendants. The TCPA creates a private right of action for violations of the Act. A plaintiff suing under the TCPA must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated. Tenn. Code Ann. § 47-18-109 (a)(1) (2001). Timoshchuk claims that the defendants violated Tenn. Code Ann. § § 47-18-104(a) and 47-18-104(b)(6). The TCPA generally proscribes: "Unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices and are Class B misdemeanors." Tenn. Code Ann. § 47-18-104(a). Specifically, the TCPA provides the following as a violation:

> Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:
>
> ***
>
> . . .[r]epresenting that goods are original or new if they are deteriorated, altered to the point of decreasing the value, reconditioned, reclaimed, used, or secondhand[.]

Tenn. Code Ann. § 47-18-104(b)(6). Timoshchuk contends that defendants misrepresented the condition of the vehicle, the nature of the warranty, the alleged previous use of the vehicle, and generally engaged in unfair and deceptive conduct.

According to Timoshchuk, the trial court used an incorrect standard to determine whether the vehicle was "new," and it should have used the standard of *Holmes v. Foster Pontiac GMC, Inc.*, 1989 WL 48515, at *2 (Tenn. Ct. App. W.S., May 10, 1989). Under *Holmes,* whether a vehicle is new for the purposes of the TCPA depends on (1) the actual use of the automobile and (2) the significance of prior transactions regarding the vehicle. *Id.* Because of the 750 miles on the vehicle coupled with the discretionary use of RBM's General Managers, Timoshchuk argues that the car was not new and it was deceptive to withhold the discretionary use.

Timoshchuk also contends that the statutory definition of a "new" vehicle found in Tenn. Code Ann. § 55-5-106(e)(5)(2008) is irrelevant to the current issue, despite the fact that Tenn. Code Ann. § 47-18-119 states that "[f]or the purposes of § 47-18-104 (b)(6), any passenger motor vehicle which meets the requirements of the definition for a new passenger car in § 55-5-106(e)(5) shall be construed to be new." § 55-5-106(e)(5) goes on to state that " 'New passenger cars' means any passenger car that has never been the subject of a sale at retail to the general public[.] " Tenn. Code Ann. § 55-5-106(e)(5). Timoshchuk does not explain why the statutory definition should be ignored, nor does he mention that the statutory definition came into effect a year after *Holmes*.

Timoshchuk also contends that even if § 55-5-106(e)(5) were applicable, the "Customer Assistance Referral" document and "Mercedes-Benz USA Campaign Information" document show that the vehicle may have been sold at retail to the public before it was purchased by the Timoshchuks. Timoshchuk argues that, because the trial court must draw all reasonable inferences in favor of the nonmoving party, at the very least, this information creates a genuine issue of material fact.

Lastly, Timoshchuk argues that Long's failure to disclose the trunk damage was deceptive under Tenn. Code Ann. § 47-18-104(a). Timoshchuk argues that Long's lack of knowledge about the trunk is immaterial under *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 591 (Tenn. Ct. App. 1980), which suggests that deceptive conduct under the TCPA "does not necessarily have to

be willfully and knowingly made." *See Haveriah v. Memphis Aviation, Inc.,* 674 S.W.2d 297, 306 (Tenn. Ct. App. 1984).

Long and MBUSA counters that Timoshchuk's reliance on *Holmes* is misplaced because the holding was essentially abrogated by the legislature's inclusion of a statutory definition for a "new" vehicle the following year. Long and MBUSA also point to the Certificate of Origin, Certificate of Title, the CarFax report, and the testimony of RBM's Controller, all of which show, that the vehicle is new. Long and MBUSA also contend they did not act deceptively in failing to reveal the trunk damage because they could not disclose what was unknown. In the case of Long, it is undisputed that it was not told about the trunk damage until months after the sale. In the case of MBUSA, the damage occurred after the vehicle left the control of MBUSA.

Long and MBUSA further argue that Timoshchuk has provided no proof that he does not have a new car warranty. Addressing the mileage, they allege that Timoshchuk was aware of the mileage, signed the odometer statement, and cannot now complain about how those miles were accrued.

Finally, Long and MBUSA ask the court to find that Timoshchuk's appeal is frivolous pursuant to Tenn. Code Ann. § 27-1-122 (2000) and award costs and attorney's fees in defending the appeal.

We agree that Timoshchuk's reliance on *Holmes* is unwarranted. While the court's holding in *Holmes* makes a great deal of intuitive sense, the Tennessee Legislature has since clarified the definition through statute. Long correctly points out that *Holmes* was decided in 1989, a year before Tenn. Code Ann. § 47-18-119 was added to the TCPA. In fact, the court in *Holmes* was clearly trying to divine the intention of the Legislature that had not yet spoken on the issue of what makes a vehicle "new." For instance, *Holmes* contains the following language, "It seems to us that the Legislature did not intend for the application of this section of the Act to apply only to those automobiles on which title had previously passed." *Holmes*, 1989 WL 48515, at \*2.

On the contrary, the 1990 enactment of Tenn. Code Ann. § 47-18-119 shows that the Legislature intended the defining characteristic of a new vehicle to be passage of title to the general public. As previously mentioned, Tenn. Code Ann. § 47-18-119 states "[f]or the purposes of § 47-18-104(b)(6), any passenger motor vehicle which meets the requirements of the definition for a new passenger car in § 55-5-106(e)(5) shall be construed to be new." Tenn. Code Ann. § 55-5-106(e)(5) states " '[n]ew passenger cars' means any passenger car that has never been the subject of a sale at retail to the general public[.]" Thus, for the purpose of the TCPA, § 47-18-104(b)(6), a new car is one that has never been subject to sale to the general public.

Timoshchuk contends that even under this definition of "new," he should still survive summary judgment because the "Customer Assistance Referral" document and "Mercedes-Benz USA Campaign Information" document show that the vehicle may have been sold at retail to the public before he purchased it, thereby creating a genuine issue of material fact. We disagree. While

the "Customer Assistance Referral" document and "Mercedes-Benz USA Campaign Information" document may create a dispute and may be material, we do not believe it creates a genuine issue of material fact. In taking the strongest legitimate view of the evidence in favor of Timoshchuk, a reasonable jury could not legitimately come to the conclusion that the vehicle was sold at retail to the public before it was sold to Timoshchuk. It is difficult to conclude that a reasonable jury would credit two minor, passing references in obscure internal Mercedes documents in the face of overwhelming and contrary industry-standard documentation and sworn testimony. Regarding the claims under Tenn. Code Ann. § 47-18-119 and § 47-18-104(b)(6), defendants affirmatively negated the essential element of Timoshchuk's claim by presenting the overwhelming evidence that the vehicle was sold at retail to the public for the first time when Timoshchuk purchased it. Therefore, we hold that neither Long nor MBUSA can be liable under § 47-18-104(b)(6) of the TCPA.

Addressing the status of the warranty and the nature of the mileage, we find that those arguments are moot. Despite what Timoshchuck may have been told at some point about the warranty, Long and MBUSA have always claimed that it was a new car warranty. During the summary judgment motion hearing, the trial judge found that the warranty was new and held that the parties must comply with a new car warranty. We are satisfied that Timoshchuk does in fact have a new warranty, and Long and MBUSA are aware of their obligation to treat it as such. Turning to the mileage, it is undisputed that Timoshchuck signed an odometer statement acknowledging the 756 miles. In this court's opinion, how those miles were accrued is immaterial, especially in light of no allegations that the trunk damage occurred during the use by the RBM employees.

Timoshchuk singles out Long and contends that even if Long is not liable under Tenn. Code Ann. § 47-18-104(b)(6), it can still be liable under the larger catch-all of "unfair and deceptive" practices provision of Tenn. Code Ann. § 47-18-104(a) because such acts do not have to be willful. Timoshchuk is correct that he may still have a cause of action under Tenn. Code Ann. § 47-18-104(a). *See Paty v. Herb Adcox Chevrolet Co.*, 756 S.W.2d 697, 699 (Tenn. Ct. App. 1988) (holding that plaintiff could still recover under Tenn. Code Ann. § 47-18-104(a) even if no recovery under Tenn. Code Ann. § 47-18-104(b)(6)).

Thus, we must determine whether Long acted "deceptively" or "unfairly" according to the TCPA even though it is undisputed that Long had no knowledge of the damaged trunk when it sold the vehicle to Timoshchuk. Because the TCPA does not define the key terms "unfair" and "deceptive," "the standards to be used in determining whether a representation is "unfair" or "deceptive" under the TCPA are legal matters to be decided by the courts." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005). *Tucker* explains:

> **A deceptive act or practice is one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact.** Thus, for the purposes of the TCPA and other little FTC acts, the essence of deception is misleading consumers by a merchant's statements, silence, or actions.

> The concept of unfairness is even broader than the concept of deceptiveness, and it applies to various abusive business practices that are not necessarily deceptive. In the 1994 legislation reauthorizing the Federal Trade Commission, Congress undertook to codify the Commission's policy statement on unfairness by stating that **an act or practice should not be deemed unfair "unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition**." Following the mandate of Tenn. Code Ann. § 47-18-115, we will use this description of unfairness to guide our interpretation of Tenn. Code Ann. § 47-18-104(a).

*Tucker*, 180 S.W.3d at 116 - 117 (emphasis added, internal citations omitted; footnotes omitted). Furthermore, it is well settled that "[c]laims under the TCPA are not limited to misrepresentations that are fraudulent or willful." *Id.* at 115. Thus, "recovery under the Act is not constrained to intentional acts, rather it also contemplates negligent conduct." *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 12 (Tenn. Ct. App. 1992) (observing that "to limit recovery to only fraudulent, willful, or knowing misconduct would render the treble damages provision for willful and knowing violation of the Act redundant. . . .)

In order to succeed on a claim for negligent misrepresentation, the plaintiff must prove by a preponderance of the evidence that "the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information, and the plaintiffs justifiably relied on the information." *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (quoting *Williams v. Berube & Assocs.*, 26 S.W. 3d 640, 645 (Tenn. Ct. App. 2000)).

Turning to the case at bar, it is undisputed that Long represented the vehicle as new, which implies that the vehicle was undamaged. By representing that the vehicle was new and implying that it was undamaged, it superficially appears that Long performed a "deceptive act" in that it caused Timoshchuk to believe what is false and misled him to a matter of fact as contemplated by *Tucker*. At the same time, however, it is undisputed that Long was not told by RBM about the trunk damage. Long did not withhold information about the damaged trunk intentionally, and the pertinent question becomes whether Long was *negligent* in its representation that the vehicle was new. The key to whether Long acted negligently is whether it "did not exercise reasonable care in obtaining or communicating the information" that the vehicle was new and undamaged. *See id.*

In this instance, Long relied on various industry-standard documentation to determine that the vehicle was new. This documentation included the Mercedes STAR computer network, the vehicle's Certificate of Origin and Certificate of Title, and the CarFax Report. Long certainly relied on the word of RBM as well. Concerning the trunk damage, it was repaired by an authorized Mercedes-Benz body shop in Atlanta, Georgia. The repair was thorough enough that Timoshchuk

did not notice the damage until four months after he bought the vehicle. Even then, Long had to use a special paint strip test to confirm that the trunk had been repainted. Long unquestionably has a duty of care when it comes to verifying that it is selling a new vehicle and that the new vehicle is undamaged. However, that duty of care must fall within the bounds of reasonableness. Long was reasonable in relying on the above documentation to ensure that the vehicle was new. Furthermore, it is simply unreasonable to require Long to apply a paint-strip test to every paint panel of every car they receive. Even a reasonably thorough inspection of the vehicle could have missed the relatively small, professionally-repaired defect. We hold that regardless of whether Long's representations about the car were "deceptive" or "unfair" under Tenn. Code Ann. § 47-18-104(a) and *Tucker*, Long nevertheless used reasonable care in attempting to determine that the vehicle was new and undamaged. Accordingly, Long did not negligently misrepresent the status of the vehicle; in turn, Long cannot be held liable for deception or unfair practices under the TCPA.

Because RBM's response to Timoshchuk's TCPA allegations are somewhat different than those of Long and MBUSA, we must discuss it separately.

RBM first argues that it did not engage in any deceptive act actionable under the TCPA because RBM's transaction with Long is governed by Georgia law as stated in *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992) (holding that Tennessee will follow the "most significant relationship" analysis for conflicts questions in tort cases). RBM argues that Georgia has the most significant relationship to the transaction because the entire transaction between Long and RBM occurred entirely in Georgia.

Because Georgia law controls, RBM contends that it is protected from liability by Georgia disclosure statutes. Under Georgia law, a "new" vehicle "means a motor vehicle which has been sold to a dealer and on which the original motor vehicle title has not been issued." Ga. Code Ann. § 40-2-39(a)(6) (2008). Ga. Code Ann. § 40-1-5(b) (2008) provides:

> [P]rior to the sale of a new motor vehicle, a dealer must disclose to the buyer any damage which has occurred to the vehicle of which the dealer has actual knowledge and which costs more than 5 percent of the manufacturer's suggested retail price to repair. Prior to the sale of a new motor vehicle, a dealer must also disclose to the buyer any damage which has occurred to the paint of which the dealer has actual knowledge and which costs more than $500.00 to repair. Damages shall be calculated at the actual cost of such repair.

*Id.*

In construing this provision, the Georgia Court of Appeals has explained that when the "actual cost of such repair" does not reach 5% of the MSRP, the dealer is "not required to disclose the damage to [the buyer] prior to the sale." *Nall v. Bill Heard Chevrolet*, 518 S.E.2d 164, 166 (Ga.

Ct. App. 1999).  In the instant case, the repairs made totaled less than 1% of the MSRP of the vehicle;  as a result, RBM contends that it was not required to disclose the damages.  Additionally, RBM claims that it was not required to disclose the paint repairs because the invoice for the body work reflects that the paint repair cost less than $500.00.

RBM also argues that the TCPA is inapplicable because its purpose is to protect consumers from practices that occur "in part or wholly within [Tennessee]."  Tenn.  Code Ann. § 47-18-102. The entire transaction between Long and RBM occurred in Georgia, and RBM alleges the TCPA inapplicable.

Alternatively, if the TCPA applies, RBM asserts that it did not engage in an unlawful act under the TCPA law because the vehicle was "new" under Tennessee law.  It also contends that an "unfair" act under the TCPA is one that causes "substantial" injury to consumers.  *Tucker*, 180 S.W.3d at 116.  The injury will be considered substantial if "a relatively small harm is inflicted on a large number of consumers or if a greater harm is inflicted on a relatively small number of consumers."  *Tucker*, 180 S.W.3d at 117.  RBM asserts that $650 dollars worth of damages to one person cannot be considered substantial under the TCPA.  Thus,  no unfair act occurred under the TCPA because there is no substantial injury.  RBM also alleges that Timoshchuk provides no proof of an ascertainable loss – a requirement under the TCPA.

Finally, RBM spends several pages arguing the axiomatic concept that Timoshchuk cannot raise the claims that he voluntarily dismissed on appeal.  Timoshchuk's non-suit of his breach of contract and implied contract claims against RBM extinguished all recovery for compensatory damages or the amount of ascertainable loss for the vehicle's diminution in value.  As a result, RBM argues that Timoshchuk's claims under the TCPA are either moot or not justiciable.

Based on *Hataway,* RBM urges us to apply Georgia law because the entire contract between Long and RBM occurred in Georgia.  As we later explain, *Hataway* is applicable to this appeal, but RBM's *Hataway* analysis is flawed for the following reasons.

In *Hataway*, the Tennessee Supreme Court adopted the "most significant relationship" test from the Restatement (Second) of Conflict of Laws.  However, *Hataway* only applies to tort cases. It is inapplicable to choice-of-law provisions governing contracts.  *Hataway*, 830 S.W.2d at 59.  In terms of contracts, Tennessee has long applied the doctrine of "lex loci contractus" when dealing with contractual choice-of-law issues. *Ellis v. Pauline S. Sprouse Residuary Trust,* 280 S.W.3d 806, 814 (Tenn. 2009).  Accordingly, "this rule provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999).  Turning to the present case, Georgia law applies to the contract between RBM and Long because it was entered into in Georgia.  Although

RBM correctly notes that Georgia law governs the contract between RBM and Long, it incorrectly applies the "most significant relationship" test.

Nevertheless, whether Georgia or Tennessee law applies to the contract between Long and RBM is immaterial. Timoshchuk is the plaintiff in this action, and he is not suing RBM due to a contract dispute. Instead, Timoshchuk brought this action under the TCPA, which is a remedial statute based in tort. *See Lipford v. First Family Fin. Servs., Inc.*, No. W2003-01208-COA-R3-CV, 2004 WL 948645, at \*4 (Tenn. Ct. App. W.S., April 29, 2004) (declining to apply the parol evidence rule to the admission of oral evidence because the suit was "a tort action based on allegations of fraud and violations of the Tennessee Consumer Protection Act"). Although Long and RBM's contractual relationship is controlled by Georgia law, it does not necessarily follow that Georgia law governs Timoshchuk's suit in tort against RBM.

For this reason, we must also disagree with RBM's contention that the TCPA lacks jurisdiction. Again, the relationship between Long and RBM is immaterial; it is the circumstances surrounding the sale of the vehicle to Timoshchuk that gives rise to this lawsuit. Because that sale occurred in Tennessee, the lawsuit is based on practices that occurred in part or wholly within Tennessee. It is also important to note that the lack of privity of contract between Timoshchuk and RBM is immaterial because privity of contact is not required to sustain an action under the TCPA. *See Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 915 (Tenn. Ct. App. 2000). It is of no consequence that RBM is based outside of Tennessee. Tennessee consumers may use the TCPA to sue foreign corporations as long as the deceptive or unfair act complained of occurred in Tennessee. *See, e.g.*, *Ellipsis, Inc. v. The Colorworks, Inc.*, 329 F. Supp.2d 962, 966-67 (W.D. Tenn. 2004); *Sherwood v. Microsoft Corp.*, No. M2000-01850-COA-R9-CV, 2003 WL 21780975, at \*29 (Tenn. Ct. App. M.S., July 31, 2003). Accordingly, we find that the TCPA does not lack jurisdiction in this matter because of the contractual relationship between Long and RBM or the lack of privity between Timoshchuk and RBM.

We also disagree with RBM's contention that it did not engage in an act declared unlawful by the TCPA because the vehicle was "new" under Tennessee law. This argument presupposes that Timoshchuk is only suing under § 47-18-104(b)(6) and ignores the fact he is also suing under the "catch all" provision of Tenn. Code Ann. § 47-18-104(a). Regardless of whether the vehicle is "new" as a matter of law, Timoshchuk contends RBM deceived him by its failure to disclose that the vehicle was previously damaged.

RBM's argument that its actions were not "unfair" under the TCPA because Timoshchuk's harm was not substantial is unpersuasive. The TCPA is designed to protect consumers from behavior that is either deceptive *or* unfair. Tenn. Code Ann. § 47-18-109(a)(1). Thus, "deceptiveness" and "unfairness" are two separate and distinct concepts. In fact, as explained above, *Tucker* defines the two words independently of one another. *Tucker*, 180 S.W.3d at 116 - 117.

Such a distinction makes sense as an action can be unfair but not deceitful.[2]  Regardless of whether RBM's failure to disclose the trunk damage meets *Tucker*'s definition of "unfair," it certainly meets *Tucker's* definition of "deceptiveness," i.e., " . . . an act or practice that causes or tends to cause a consumer to believe what is false or that misleads . . . ."  *Id.*  Timoshchuk alleges that RBM indirectly led him to believe that he was receiving an undamaged vehicle.

Despite our disagreement with RBM's analysis on the above matters, nonetheless, we agree that a significant issue exists concerning choice-of-law.  The fact remains that RBM was acting pursuant to Georgia statutes.  As a result, the dispositive question is whether RBM is entitled to rely on the Georgia disclosure statutes, or whether RBM is required to follow Tennessee law, which contains no such statute.  Thus, we are presented with a choice-of-law question as to whether Tennessee or Georgia law controls Timoshchuk's action against RBM.

As previously mentioned, when deciding choice-of-law issues in tort cases, we use the "most significant relationship" test found in *Hataway* and the Restatement (Second) of Conflict of Laws.  The "most significant relationship" test requires us to apply the following principles and factors:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability, and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).  When applying the principles of § 6, the following factors must also be considered:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties,
(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145 (1971).  § 145 also instructs that "these contacts are to be evaluated according to their relative importance with respect to the particular issue."  *Id.*

The contacts between Timoshchuk and RBM do not clearly favor either party.  The place where the injury occurred is Tennessee because that is where Timoshchuk purchased the vehicle.

---

[2] An example would be overly onerous interest rates or late fees that are clearly spelled out in an agreement.

The conduct causing the injury occurred in Georgia because that is where the vehicle was damaged. Timoshchuk is a resident of Tennessee, while RBM is a Georgia entity. Finally, there is no direct relationship between Timoshchuk and RBM, and therefore no place where their relationship is centered. Because the contacts of the parties are inconclusive to answering the conflicts question, we must look to the more general principles found in § 6.

Of the principles listed in § 6, we find the following to be the most significant: the relevant policies of the forum; the protection of justified expectations; the certainty, predictability, and uniformity of result; and ease in the determination and application of the law to be applied. The Georgia Legislature enacted an affirmative policy allowing Georgia auto dealers to withhold information regarding minor damage on new vehicles for sale. Here, RBM affirmatively relied on Ga. Code Ann. §§ 40-2-39(a)(6) and 40-1-5(b) when deciding to withhold information about the vehicle's damage. RBM expected those statutes to protect it from liability. If this court were to conclude that Georgia auto dealers could not rely on those statutes, it would adversely affect the certainty, predictability, and uniformity of result that those statutes create. In fact, such a decision would make those statutes practically unworkable.

Imagine a Georgia dealership transfers a slightly damaged new vehicle to another Georgia dealership. The first dealership avails itself to the non-disclosure statutes and does not inform the second dealership of the damage. Unknown to the first dealership, the second dealership then transfers the vehicle to a third dealership in Tennessee. After the vehicle's sale to a Tennessee consumer, the consumer discovers the damage and sues the first dealership. If this court were to find that the Georgia statutes were inapplicable, the first dealership would be liable even though it had no idea that the vehicle would eventually be sent to Tennessee. Such a decision on our part would require all Georgia dealerships to either continuously track every slightly damaged vehicle that passed through their lots to ensure none were ever sent to an end-user in Tennessee, or ignore the non-disclosure statutes completely. In our opinion, the first option is unworkable, while the second option negates the purpose of the statutes and the Georgia Legislature's intent.

On the other hand, if this court concludes that Georgia's non-disclosure law applies, it does not contravene any affirmative Tennessee policy. This court is aware that Tennessee consumers likely have an expectation that a "new" vehicle should be in pristine condition, especially if the price of that vehicle is $108,000. However, this expectation is not expressly protected by an affirmative legislative act. On the contrary, the Tennessee Legislature has limited the definition of a "new vehicle" to one that has never been sold at retail. In light of the above considerations, we hold that the action between Timoshchuk and RBM has the most significant relationship to Georgia law. Consequently, Georgia law protects RBM's non-disclosure, and RBM cannot be held liable for the deceptive practices associated with the non-disclosure of the damage to Timoshchuk's vehicle.

B.

-13-

Timoshchuk contends that the trial court erred in dismissing the breach of contract and breach of warranty claims against MBUSA because the acts of Long and RBM should be imputed to MBUSA under an agency theory.

Timoshchuk argues that MBUSA provided express authority to Long and RBM by allowing them to sell its cars and use its symbol. He also contends that Long's and RBM's implied authority was evidenced by their ability to use the STAR database, transfer vehicles, complete paperwork, and represent that vehicles were new on behalf of MBUSA. Under an apparent authority theory, Timoshchuk alleges that (1) MBUSA acquiesced to Long's and RBM's exercise of its authority, (2) he had a good faith belief that MBUSA could be bound by Long's and RBM's actions, and (3) he relied on this apparent authority to his detriment.

Timoshchuk also returns to his TCPA argument, but this time he bases the TCPA violation on an agency theory. He claims that MBUSA is liable for the acts of Long and RBM because they are MBUSA's agents. Thus, any violations of the TCPA by Long and RBM must be imputed to MBUSA. Because we have already determined that neither Long nor RBM is liable under the TCPA, we will not address this portion of MBUSA's agency argument.

MBUSA contends that Timoshchuk's agency theory is misplaced. MBUSA first notes that the franchise agreement between MBUSA and Long and RBM forecloses any possibility that Long and RBM have any express authority:

> DEALER NOT AN AGENT OR REPRESENTATIVE
>
> Dealer is in independent business. This Agreement does not constitute Dealer [*sic*] the agent or legal representative of MBUSA or DCAG for any purpose whatsoever. ***Dealer is not granted any expressed or implied right or authority to assume or create any obligation on behalf of or in the name of MBUSA or DCAG or to bind MBUSA or DCAG in any manner whatsoever***.

(emphasis added). As a result, MBUSA argues there is no express agency relationship giving rise to implied authority on the part of Long and RBM.

Regarding apparent authority, MBUSA points out that it is long settled that apparent authority must be established by the acts of the principal and not the acts of the agent. *Southern Ry. Co. v. Pickle*, 197 S.W. 675, 677 (Tenn. 1917)*; Bells Banking Co. v. Jackson Centre, Inc.*, 938 S.W.2d 421, 424 (Tenn. Ct. App. 1996). MBUSA had no communication with the Timoshchuk, and Timoshchuk's dealings with Long were inadequate for Long to be considered the apparent agent of MBUSA. MBUSA cites *Edwards v. Int'l Harvestor Co.*, 688 S.W.2d 456, 459 (Tenn. Ct. App. 1985), where the court held that a vehicle-manufacturer and vehicle-dealer relationship does not create an agency relationship. In *Edwards*, the buyer of a truck filed suit against the manufacturer and a dealer alleging a number of causes of action based on the vehicle's failure to operate as

expected and as represented. *Id.* at 458. On appeal, the court considered the plaintiff's argument that the manufacturer was liable for the actions of the dealership by virtue of the alleged agency created by the manufacturer-dealer relationship. Affirming the trial court's dismissal of the claims against the manufacturer, the court noted that a dealer relationship "does not equal an agency relationship." *Id*. at 459. The court explained:

> An important element of an agency relationship is that "the object of the contract be for the benefit of the principal. . . . *[T]he principal test of agency is whether the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent."* Plaintiff failed to put on any proof that Gallatin Truck Sales sold International Trucks for the sole benefit of International Harvester and, indeed, plaintiff would have found it impossible to do so. As long as Gallatin paid International for its trucks, Gallatin could have destroyed the trucks or put them on a back lot forever.

*Id.* (emphasis added, internal citations omitted).

We agree with MBUSA that Timoshchuk's agency arguments are unpersuasive. The plain language of the agreement between MBUSA and the dealerships forecloses any possibility of the existence of express or implied authority. Additionally, the absence of communication between MBUSA and Timoshchuk prior to the sale of the vehicle eliminated any possibility of apparent authority. Like in *Edwards,* once MBUSA sold a vehicle to a dealership such as RBM, MBUSA no longer controlled the dealership's conduct concerning that vehicle. Neither RBM's sale of the vehicle to Long, nor Long's sale to Timoshchuk, were carried out by the dealers as agents for MBUSA. Therefore, the trial court did not err in dismissing Timoshchuk's breach of contract and breach of warranty claims against MBUSA because an agency relationship did not exist between MBUSA and the respective dealers.

## V. CONCLUSION

We hold that the trial court did not err in (1) dismissing the Tennessee Consumer Protection Act claims against all defendants and (2) dismissing the breach of contract and warranty claims against MBUSA. Therefore, the judgment of the trial court is affirmed. We also find that Timoshchuk raised legitimate issues on appeal and deny Long's and MBUSA's request for attorneys fees. Costs on appeal are taxed to Appellant, Rostis N. Timoshchuk. The case is remanded to the trial court for enforcement of the court's judgment and for collection of costs assessed below, pursuant to applicable law.

_____
JOHN W. McCLARTY, JUDGE